# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Kendrick Ledelle Dotstry,<br><br>Defendant. | Case No. 16-cr-346 (SRN/HB)<br><br>**ORDER** |

Andrew Dunne, United States Attorney's Office, 300 South Fourth St., Ste. 600, Minneapolis, MN 55415, for the United States of America.

F. Clayton Tyler, F. Clayton Tyler, P.A., 331 Second Ave S., Ste. 230, Minneapolis, MN 55415, for Kendrick Ledelle Dotstry.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Objections ("Objs.") [Doc. No. 35] to the Report and Recommendation of Magistrate Judge Bowbeer ("R&R") [Doc. No. 34]. For the reasons set forth below, Defendant's Objections are overruled in part and sustained in part.

## I. BACKGROUND

### A. Facts[1]

On November 19, 2016, Minneapolis police received multiple 911 calls reporting a domestic abuse in progress. (R&R at 2.) The callers stated that someone was pointing a gun with a laser at people in an apartment complex and gave a description of the suspect and his vehicle. (*Id.* at 2–3.) Officers, including Officer Andrew Schroeder ("Officer Schroeder"), responded and located a vehicle and individual—later identified as Defendant Kendrick Ledelle Dotstry ("Dotstry")—matching those descriptions. (*Id.* at 3.)

The officers initiated a traffic stop, drew their weapons, and gave Dotstry a series of commands to put his hands up, exit the vehicle, and walk backwards toward the squad car. (*Id.*) Initially, Dotstry did not comply with these commands and ducked down out of sight in his vehicle. (*Id.*) However, Dotstry did eventually exit the vehicle with his hands up, walked backwards towards the squad car, and knelt on the ground as ordered. (*Id.*)

Officer Schroeder was tasked with taking Dotstry into custody. (*Id.*) He first asked if Dotstry had a gun on his person. (*Id.*) Dotstry said he did not. (*Id.*) Then, as

---

[1] Magistrate Judge Bowbeer set forth the relevant facts in her Report and Recommendation after holding an evidentiary hearing at which numerous video recordings of the incident were presented and one of the officers involved testified. (*See* R&R at 1–5.) Defendant does not object to this recitation of the facts and gives a nearly identical accounting of the relevant facts in his Objections. (*See* Objs. at 1–2.) Thus, the Court cites to facts in the Report and Recommendation for the sake of efficiency.

Officer Schroeder was handcuffing Dotstry, he asked Dotstry if there was a gun in the vehicle. (*Id.*) Dotstry did not respond. (*Id.*) The following exchange then occurred, as Officer Schroeder was in the process of taking Dotstry into custody and the other officers were securing the vehicle:

> Officer Schroeder: We got a call you were pointing a gun around.
>
> Dotstry: I was pointing a gun?
>
> Officer Schroeder: That's why we're here
>
> Dotstry: I do have one. There's one in the car.
>
> Officer Schroeder: Is there one in the car?
>
> Dotstry: Yes, sir.
>
> Officer Schroeder: Do you got a permit for it?
>
> Dotstry: No, I don't, sir.
>
> Officer Schroeder: Ok. Very good. Right now you're under arrest for possession of a handgun, ok?
>
> Dotstry: Yes, sir.
>
> Officer Schroeder: You want to tell me where it is just so my officers –[2]
>
> Dotstry: It's in the middle console.

---

[2] As Judge Bowbeer noted, neither party provided an official transcript of the video recordings that captured this exchange and it is difficult to discern exactly what is said and when because Officer Schroeder and Dotstry talk over each other at times. This quoted portion is taken from Dotstry's Objections and is identical to the one he presented to Judge Bowbeer. (*See* Objs. at 2; R&R at 4 n.1.) However, the Court agrees with Judge Bowbeer that, based on the recording, Officer Schroeder's final sentence in this exchange likely was "You want to tell me where it is just so my officers' safety-" at which point Dotstry interrupted him to say that the gun was in the middle console.

(*Id.* at 3–4.) Dotstry also alleges that—during the subsequent search of his person—Officer Schroeder asked him "what had been going on, and . . . about items found in his pockets."[3] (Objs. at 2.) It is undisputed that Dotstry was not read his *Miranda* rights before any of this questioning occurred. Ultimately, other officers located and seized a loaded Sig Sauer 9-millimeter handgun from the center console of Dotstry's vehicle. (*Id.* at 4.)

Officer Schroeder next transported Dotstry to the jail. (*Id.*) During this time, Officer Schroeder and Dotstry had several discussions, many initiated by Dotstry. At one point, Dotstry questioned why Officer Schroeder had not read him his *Miranda* rights. (*Id.*) Officer Schroeder responded that the investigators would read him his rights because they, not Officer Schroeder, would be the ones interviewing him and asking him questions. (*Id.*)

Upon arriving at the jail, Dotstry continued to ask Officer Schroeder questions as they waited in the sally port. (*Id.* at 5.) For example, Dotstry asked how much "time" he was facing. (*Id.*) Dotstry also told Officer Schroeder that he had considered getting out of the vehicle with the gun, but decided against it because he was a new father. (*Id.*) Dotstry was ultimately charged with one count of felon in possession of a firearm. (*Id.* at 2.)

---

[3] Dotstry does not cite to any evidence in the record that shows exactly what he was asked and what answers he gave during this alleged exchange. (*See* Objs. at 2.) The Report and Recommendation does not mention this exchange. (*See* R&R at 2–5.) However, the Government has not suggested that it intends to use any of Dotstry's statements from this exchange as evidence.

### B. Procedural Posture

Dotstry filed his Motion to Suppress Statements requesting that his statements to Officer Schroeder be suppressed because he was not read his *Miranda* rights before being subjected to Officer Schroeder's questioning. (Defs.' Mot. to Suppress Statements [Doc No. 24].) There are two important points about the scope of Dotstry's Motion. First, the Government has represented that it will not seek to introduce any of the statements Dotstry made while being transported to jail in the squad car. (*See* R&R at 4.) Thus, Dotstry's Motion is moot as to those statements.

Second, none of Dotstry's briefing addresses the statements he made in the sally port at the jail. (*See id.* at 6; Objs.) To the extent that Dotstry seeks to suppress those statements, his Motion is denied because they were voluntarily made and were not the product of any interrogation. (*See* R&R at 11.) This leaves only the statements Dotstry made during the course of his arrest.

The Report and Recommendation recommended denying Dotstry's Motion to Suppress and allowing the statements he made during his arrest because the public safety exception applied. (*Id.* at 7–11.) For the reasons discussed below, this Court respectfully adopts the Report and Recommendation in part.

## II. DISCUSSION

### A. Legal Standard

This Court conducts a de novo review of specific objections to a magistrate judge's report and recommendation regarding a motion to suppress. Fed. R. Crim. P.

59(b)(1), (3); 28 U.S.C. § 636(b)(1); *United States v. Alonzo*, No. 15-cr-165 (JRT/LIB), 2016 WL 1531522, at *7 (D. Minn. Apr. 15, 2016).

### B. Statements Made During the Arrest

Dotstry argues that the statements he made during his arrest were involuntary—and thus inadmissible—because they were the result of questions and statements by Officer Schroeder that amounted to an interrogation and Dotstry was not first informed of his *Miranda* rights. (*See* Objs. at 3–8.) Specifically, Dotstry contends that the so-called "public safety exception" to the *Miranda* rule does not apply because at the time Officer Schroeder questioned him, he was complying with the officers' commands and his vehicle was secured (i.e., there were no exigent circumstances justifying the application of the exception). (*See id.* at 4–7.) Finally, Dotstry argues that "even if the public safety exception applied to the officer's initial questions about the gun, it does not apply to the officer's further questions, including asking Mr. Dotstry 'what was going on back there.'" (*Id.* at 8.)

Generally, in order for statements made by one who is interrogated while in law enforcement custody to be considered voluntary and admissible, the individual must first be advised of his right to remain silent, his right to counsel, and to have counsel present during any questioning.[4] *See New York v. Quarles*, 467 U.S. 649, 654 (1984). However, statements made in response to law enforcement questioning are admissible even without a *Miranda* warning when the questioning is "necessary to secure [law enforcement]

---

[4] These rights stem from the Fifth Amendment's guarantee against compulsory self-incrimination and are often referred to as *Miranda* rights after *Miranda v. Arizona*, 384 U.S. 436 (1966).

safety or the safety of the public" as opposed to questioning "designed solely to elicit testimonial evidence from a suspect." *Id.* at 659. The key element of the public safety exception is that the statements be made in response to questioning designed to locate and secure evidence that is potentially dangerous (i.e. weapons and drug paraphernalia). *See id.*; *United States v. Williams*, 181 F.3d 945, 954 n. 13 (8th Cir. 1999) ("While the officer did not specifically refer to weapons or safety concerns in the question posed to Williams, the question sought information related to weapons or other safety concerns."); *United States v. Pickar*, No. 08-cr-116 (PJS/SRN), 2008 WL 5412365, at *7 (D. Minn. Nov. 18, 2008), *adopted in relevant part*, 2008 WL 5412363 (D. Minn. Dec. 23, 2008) (collecting cases that "illustrate that the public safety exception usually applies where a suspect has stored or abandoned dangerous evidence that may pose a threat to officers or to the public").

This exception applies even when a suspect has been arrested and secured because "the risk of police officers being injured by the mishandling of unknown firearms or drug paraphernalia provides a sufficient public safety basis to ask a suspect . . . whether there are weapons or contraband in a car or apartment that the police are about to search." *United States v. Liddell*, 517 F.3d 1007, 1009–10 (8th Cir. 2008); *see Williams*, 181 F.3d at 953–54 (applying the public safety exception to statements identifying the location of a gun within an apartment made by a defendant who was handcuffed and in the presence of numerous officers because "the officers could not have known whether other hazardous weapons were present in the apartment that could cause them harm if they happened upon them unexpectedly or mishandled them in some way"); *see also United States v.*

*Everman*, 528 F.3d 570, 572 (8th Cir. 2008) (applying the public safety exception to statements identifying the location of a handgun in a nearby vehicle made by a defendant who was handcuffed and had complied with the officer's commands).

Here, the public safety exception applies to Dotstry's statements regarding his possession of a gun and its location within the vehicle. Officer Schroeder's questions, especially in light of the 911 calls that summoned the officers to the scene and Dotstry's act of ducking down in the vehicle (potentially concealing a weapon in the process), were clearly aimed at locating a firearm that might otherwise pose a danger to officers and the public. In fact, Officer Schroeder explicitly voiced his concern about officer safety when he asked Dotstry to disclose the location of the weapon within the vehicle.

The fact that Dotstry was largely compliant with the officers' commands and was in the process of being handcuffed does not change this conclusion. *See Liddell*, 517 F.3d at 1009–10; *Williams*, 181 F.3d at 953–54; *Everman*, 528 F.3d at 572. Moreover, there were ample exigent circumstances to justify Officer Schroeder's questions about the gun: the officers had just arrived on scene, they were responding to multiple 911 calls about a man pointing a gun at people, Dotstry initially behaved in a way that suggested he might be concealing something within the vehicle, and Dotstry made his statements before officers secured the vehicle or the weapon in question.

However, the public safety exception does *not* apply to Dotstry's statements in response to Officer Schroeder's question about whether Dotstry had a permit for the gun, or any of his questioning regarding "what had been going on" and the items he found in Dotstry's pockets. These questions were not "reasonably prompted by a concern for the

public safety." *Quarles*, 467 U.S. at 650; *see Liddell*, 517 F.3d at 1010–13 (Gruender, J. concurring) (cautioning against expanding the public safety exception beyond situations involving exigent circumstances and questioning related to officer and public safety). Officer Schroeder's question about whether Dotstry had a permit for the gun was irrelevant to locating and securing the weapon. Rather, it was designed to ascertain whether Dotstry's possession of the weapon violated Minnesota law. *See* Minn. Stat. § 624.714, subd. 1(a) (making it a crime to possess a handgun in public without a permit). The investigative intent behind this question is evident because after Dotstry stated he did not have a permit, Officer Schroeder announced that he was under arrest for "possession of a handgun." Similarly, Officer Schroeder's questions about what was going on—which came after Dotstry was arrested and the vehicle secured—were investigatory in nature, not designed to locate the dangerous weapon at issue. It is not clear if the Government intends to introduce Dotstry's responses to these questions, but to the extent that it does, Dotstry's Motion is granted and these statements are suppressed because they were obtained before Dotstry was given a *Miranda* warning.

### III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections [Doc. No. 35] are **OVERRULED IN PART AND SUSTAINED IN PART**.

2. The Report and Recommendation [Doc. No. 34] is **ADOPTED IN PART** and the Court respectfully **declines to adopt it in part** as set forth below:

a. Defendant's statements made during the course of his arrest related to his possession of a firearm and its location within the vehicle, as well as the statements he made in the sally port of the jail, **will not be suppressed**.

b. Defendant's statement that he did not have a permit for the gun and his responses to Officer Schroeder's questioning regarding what was going on and the items found in Defendant's pockets **are suppressed**.

3. Defendant's Motion to Suppress Statements [Doc. No. 24] is **GRANTED IN PART AND DENIED IN PART** consistent with the reasoning and parameters described herein.

Dated: May 26, 2017         s/ Susan Richard Nelson
                            SUSAN RICHARD NELSON
                            United States District Judge