UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 16-346 (SRN/HB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Kendrick Ledelle Dotstry, | |
| Defendant. | |

Andrew S. Dunne, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Robert M. Paule, Robert M. Paule, PA, 920 Second Avenue South, Suite 975, Minneapolis, Minnesota 55402, for Defendant Kendrick Ledelle Dotstry

SUSAN RICHARD NELSON, United States Magistrate Judge

Before the Court is the Motion to Withdraw Plea of Guilty [Doc. No. 62] filed by Defendant Kendrick Ledelle Dotstry ("Dotstry"). On November 3, 2017, the Court held an evidentiary hearing on this motion, at which Dotstry offered testimony and counsel presented oral arguments. For the reasons set forth below, Defendant's motion is denied.

I.   BACKGROUND

   A.   Offense Conduct and Charges

The Indictment [Doc. No. 1] in this case charges Dotstry with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) & 924 (a)(2). Dotstry had prior felony convictions from this District for possession with intent to distribute cocaine in 2000, and conspiracy to distribute cocaine/cocaine base in 2009. (Indictment at 1.)

The current charges stem from events occurring on November 19, 2016, when several 911-callers reported an in-progress domestic abuse incident at a Minneapolis apartment complex. (See R&R at 2 [Doc. No. 34].) While officers were en route to the scene, they learned the suspect's name and obtained a description of the suspect and his vehicle. (Id.) The callers indicated that the suspect had also pointed a gun at several persons near the apartment complex. (Id. at 3.)

At the evidentiary hearing on the instant motion, Dotstry testified that his actions on the day in question were in self-defense. (See Nov. 3, 2017 Hr'g Tr. at 12 [Doc. No. 73].) As he explained at the hearing and in a November 3, 2017 letter to the Court, on November 19, 2016, he visited the apartment complex to attend a baby shower for a woman named Juanita, with whom he was expecting a child. (Def.'s Nov. 3, 2017 Letter at 2 [Doc. No. 68].) At the same time, however, Dotstry was also expecting a child with a different woman—a fact that was apparently known to Juanita and members of her family, who were unhappy with Dotstry. (See id.) (stating, "A couple of sisters of . . . Juanita got involved and started a [w]hole bunch of drama and turn[ed] her family against me. (Ok[,] I deserve for them to be mad.)"). While he was arguing with Juanita in front of the building, Dotstry contends that a man named Duke told him to leave. (Id.) Dotstry then walked off and engaged in conversation with a man named Andre. (Id.) After Andre left, Dotstry asserts that he was walking to his truck when Duke approached him and the two started fighting. (Id.) Duke pulled out a gun, which Dotstry deflected, causing Duke to drop the weapon. (Id.) Shortly thereafter, Dotstry contends that "about

20" members of Juanita's family, who came out to help Duke, approached Dotstry. (Id.) Believing that Juanita's family members meant him harm, Dotstry waved a gun in front of himself. (Id.) As he later explained, "I did wave the gun to get all the people to back away from me." (Def.'s Nov. 3, 2017 Letter at 3.) Dotstry then got into his truck and started to leave. (Nov. 3, 2017 Hr'g Tr. at 12.)

When the responding police officers arrived at the scene, they observed a suspect and vehicle that matched the callers' descriptions. (R&R at 3.) After the driver, later identified as Dotstry, voluntarily pulled over, the officers initiated a stop. (Id.) Because of concerns that Dotstry was armed, officers drew their weapons, crouched behind the doors of their squad car, and issued commands to Dotstry. (Id.) Dotstry initially refused to comply, but ultimately did so. (Id. at 3.) While the officers were securing him, the following exchange occurred between Dotstry and Officer Andrew Schroeder:

> Officer Schroeder: We got a call you were pointing a gun around.
> Dotstry: I was pointing a gun?
> Officer Schroeder: That's why we're here.
> Dotstry: I do have one. There's one in the car.
> Officer Schroeder: Is there one in the car?
> Dotstry: Yes, sir.
> Officer Schroeder: Do you got a permit for it?
> Dotstry: No, I don't, sir.
> Officer Schroeder: Ok. Very good. Right now you're under arrest for possession of a handgun, ok?
> Dotstry: Yes, sir.
> Officer Schroeder: You want to tell me where it is just so my officers—
> Dotstry: It's in the middle console.

(See id. at 3–4.) Officers retrieved a loaded Sig Sauer 9-millimeter handgun from the center console of the truck and placed Dotstry under arrest. (Id. at 4.)

After transporting Dotstry to the jail's sally port, Dotstry asked Officer Schroeder how much "time" he would be facing. (Id. at 5.) Officer Schroeder responded that "everything happens for a reason" and "at least you're above ground." (Id.) Dotstry then stated that he had initially considered drawing his gun in response to the officers' commands to exit his truck, but reconsidered because he was a new father. (Id.)

### B.    Legal Proceedings

Dotstry's family retained attorney F. Clayton Tyler ("Tyler") to represent Dotstry on the felon-in-possession charge. (Nov. 3, 2017 Hr'g Tr. at 13–14.) Tyler had previously represented him on his two prior felony convictions in federal court and Dotstry testified that he was satisfied with Tyler's prior services. (See id. at 14–15.)

In his pretrial motions in this case, Dotstry moved to suppress the statements he made at the scene of arrest. (See Def.'s Mem. Supp. Mot. to Suppress at 4 [Doc. No. 32].) He argued that those statements were obtained without a Miranda warning, in violation of the Fifth Amendment. (Id.) Following a hearing on his motions, Magistrate Judge Bowbeer found that Dotstry's statements at the scene of arrest concerning the gun's location fell under the public safety exception to Miranda set forth in New York v. Quarles, 467 U.S. 649 (1984). (R&R at 7–10.) In addition, even though Dotstry did not argue for the suppression of his statements made in the jail's sally port, in an abundance of caution, the magistrate judge nevertheless addressed them as well. (Id. at 10–11.) Because Magistrate Judge Bowbeer found that Dotstry's statements made in the jail sally port were voluntary, and not in response to custodial interrogation, she found the

requirements of Miranda inapplicable. Accordingly, the magistrate judge denied Dotstry's suppression motion. (Id.) Dotstry appealed the magistrate judge's recommendation. (See Def.'s Obj. [Doc. No. 35].) On review, this Court denied Defendant's motion as to the challenged scene-of-arrest statements concerning the possession of the firearm and its location in the vehicle, and likewise adopted the magistrate judge's recommendations as to the statements made in the sally port.[1] (May 26, 2017 Order at 10 [Doc. No. 37].)

On June 13, 2017, Dotstry and his counsel appeared at a change-of-plea hearing. He did not enter into a plea agreement with the Government, (see June 13, 2017 Hr'g Tr. at 14 [Doc. No. 51],) but chose to plead guilty to the single felon-in-possession charge in the Indictment. During a lengthy colloquy with the Court, Dotstry: (1) acknowledged his competence and ability to understand the proceedings (id. at 4–6); (2) twice expressed his intention to plead guilty, (id. at 2, 12); (3) attested three times to his understanding that once he entered a guilty plea, and the Court accepted it, he would not be able to withdraw it, (id. at 4, 11, 17); (4) stated that he had reviewed the charges with his attorney and was satisfied with Tyler's legal representation, (id. at 6); (5) indicated his understanding of the constitutional rights that he was waiving by pleading guilty instead of going to trial, (id. at 7–11); (6) understood the charges against him, and the possible statutory penalties that

---

[1] This Court suppressed Dotstry's statement that he did not have a gun permit, finding the question prompting that response did not fall under the public safety exception. (May 26, 2017 Order at 8–9.) In addition, the Court suppressed statements made in response to other questions regarding "what had been going on," and some items found in Dotstry's pockets. (Id.) In all other respects, the Court denied Dotstry's suppression motion.

he faced by entering a guilty plea, (id. at 11–14); (7) understood the advisory sentencing guidelines and the range of sentences that might be applied to him; (id. at 14–17); (8) understood that the parties disagreed about the applicability of a guideline enhancement, which they would have an opportunity to argue at a later time, (id. at 15–17); (9) provided a sufficient factual basis for the guilty plea, (id. at 17–23); and (10) stated that he was making the plea voluntarily and of his own free will, without any coercion or force. (Id. at 23). The Court also advised that by pleading guilty, criminal defendants relinquish the right to bring pretrial motions. (Id. at 10.) But because Dotstry had already filed his pretrial motions, the Court stated, "You brought pretrial motions, you had a full opportunity to be heard, there was a hearing, there was a ruling, it was appealed, I ruled on it. So, you've been through that process." (Id. at 11.)

The Court ultimately accepted Dotstry's guilty plea, stating,

> I find that Mr. Dotstry is aware of the nature of the charges against him and the nature of these proceedings and the consequences of your plea of guilty. I find that your plea is free and voluntary and knowing and informed and well supported in the record by facts that establish each of the elements of the offense with which you're charged. Therefore, sir, I accept your plea of guilty, and I find you guilty as charged.

(Id. at 24.)

In July 2017, Attorney Tyler moved to withdraw as Dotstry's counsel, citing a deterioration in the attorney-client relationship. (See Counsel's Mot. to Withdraw at 1 [Doc. No. 44].) Dotstry testified that the cause of the deteriorating relationship was Tyler's refusal to assert self defense, i.e., a "justification" defense, in response to the felon-in-possession charge. (See Nov. 3, 2017 Hr'g Tr. at 30–31.) The Court granted

6

Tyler's motion, and appointed Dotstry's current counsel, Mr. Paule. (See Order [Doc. No. 54].) At the hearing on the instant motion, Mr. Dotstry waived his attorney-client privilege rights and testified about his communications with Tyler. (See Nov. 3, 2017 Hr'g Tr. at 17–18.)

On September 29, 2017, Dotstry filed his Motion to Withdraw Plea of Guilty, asserting that his guilty plea was not made knowingly and voluntarily, although his written motion contains no legal argument or additional information to explain the specific basis for his claim. (See Def.'s Mot. to Withdraw Plea at 1.) At the November 3, 2017 evidentiary hearing, however, he shifted the basis for his motion to withdraw his plea, arguing that his former counsel had provided ineffective assistance, sufficient to provide a fair and just basis for withdrawing his plea. (See Nov. 3, 2017 Hr'g Tr. at 26, 42–43.)

Dotstry contends that his former counsel misled him by giving incorrect legal advice. (Id.) At the evidentiary hearing, he testified that during the course of Tyler's representation, the two had discussed several issues, including whether to assert a justification defense, (see id. at 18), and whether Dotstry could retain his right to appeal any of the pretrial rulings. (See id. at 20–22.) Tyler's purportedly incorrect advice consists of: (1) advising Dotstry that self-defense was not an available defense to a felon-in-possession charge, (see id. at 18, 22); and (2) failing to properly advise him concerning the possible retention of his appellate rights. (See id. at 21–22.) He appears to argue that by giving him this "misleading" advice, Tyler "coerced" him into pleading guilty. (See

7

id. at 23) (Q: "Mr. Dotstry, you're basically telling this judge that you want to withdraw your plea because you felt that your plea of guilty was coerced by activities by Mr. Tyler. Isn't that correct?"  A: "Yes.")

## II.   DISCUSSION

"[A] defendant has no automatic right to withdraw a plea."  United States v. Van Doren, 800 F.3d 998, 1001 (8th Cir. 2015) (quoting United States v. Heid, 651 F.3d 850, 853 (8th Cir. 2011)).  Rather, after the court accepts a guilty plea, a defendant may only withdraw it prior to sentencing if he or she can show a fair and just reason for requesting the withdrawal.  Fed. R. Crim. P. 11(d)(2)(B).  The defendant bears the burden of demonstrating fair and just grounds for the withdrawal.  United States v. Hatch, 696 Fed. App'x 756, 758 (8th Cir. 2017) (per curiam) (citing Haubrich, 744 F.3d 554, 557 (8th Cir. 2014)).  The decision to allow or deny the motion is within the discretion of the trial court.  Id. at 758.  A guilty plea is a solemn act not to be set aside lightly.  United States v. Briggs, 820 F.3d 917, 919 (8th Cir. 2016), cert. denied, 137 S. Ct. 617 (2017) (citing United States v. Pacheco, 641 F.3d 970, 973 (8th Cir. 2011)).  Accordingly, "'[w]hen a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise.'"  United States v. Goodson, 569 F.3d 379, 382 (8th Cir. 2009) (quoting United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992)).

Even where a defendant establishes a fair and just reason for withdrawing a guilty plea, the court must consider several factors before granting the motion, including:  (1)

whether the defendant claims that he is innocent of the charge; (2) the length of time between the guilty plea and the motion to withdraw it; and (3) whether the government will be prejudiced if the court grants the motion. United States v. Ramirez-Hernandez, 449 F.3d 824, 826 (8th Cir. 2006) (citing United States v. Nichols, 986 F.2d 1199, 1201 (8th Cir. 1993)). However, if the court finds no fair and just reason to withdraw the plea, it need not consider these additional factors. Id. (citing United States v. Austin, 413 F.3d 856, 857 (8th Cir. 2005)).

Ineffective assistance of counsel can constitute a fair and just reason for withdrawal if the defendant can establish the elements of ineffective assistance set forth in Strickland v. Washington, 466 U.S. 668, 687–88 & 694 (1984): that his counsel's performance was deficient and that it prejudiced him. See Hatch, 696 Fed. App'x at 758 (citing Haubrich, 744 F.3d at 557). Courts apply a "strong presumption" that counsel's representation fell within the "wide range" of reasonable professional assistance. Harrington v. Richter, 131 S. Ct. 770, 787 (2011). Thus, to establish the "deficient performance" prong of an ineffective assistance claim, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. In order to demonstrate the "prejudice" prong in the context of a motion to withdraw a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

While the ineffective assistance of counsel may constitute a ground upon which to withdraw a guilty plea, the Eighth Circuit has observed that such claims are "usually best litigated in collateral proceedings," with the benefit of a more fully developed record. Ramirez-Hernandez, 449 F.3d at 826-27 (declining to consider, on defendant's direct appeal, his argument that he should have been permitted to withdraw his guilty plea due ineffective assistance of counsel).  But an ineffective assistance claim may be considered on direct appeal if "the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent."  Id. at 827 (citation omitted).  Our sister court, the District Court for the Northern District of Iowa, has applied the same standard to a motion to withdraw a guilty plea before that court.  See United States v. Miell, 711 F. Supp. 2d 967, 985–86 (N.D. Iowa 2010).

Given the breadth of the testimony elicited at the evidentiary hearing here, the Court finds that Dotstry's motion to withdraw his guilty plea based on ineffective assistance of counsel is ripe for consideration.  See id. (comparing United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006) (noting that because the record was "not developed at all," later consideration of the claim pursuant to a § 2255 motion was appropriate); United States v. Mugan, 441 F.3d 622, 631 (8th Cir. 2006) (finding that the claim was "best reviewed in collateral proceedings" as no factual record had been developed), with United States v. Davis, 583 F.3d 1081,1091 (8th Cir. 2009) (finding that record was sufficiently developed by hearing at which defendant's former counsel testified); Ramirez–Hernandez, 449 F.3d at 827 (observing that an ineffective-assistance claim

would theoretically be ripe for consideration on direct appeal "where the record has been fully developed"); United States v. Cook, 356 F.3d 913, 919–20 (8th Cir. 2004) (same)).

While Dotstry now asserts ineffective assistance of counsel, he concedes that he raised no concerns about his counsel's effectiveness with the Court at the change-of-plea hearing. (See Nov. 3, 2017 Hr'g Tr. at 30–32.) To the contrary, at that hearing, Dotstry testified, under oath, that he was satisfied with Tyler's services and had had the opportunity to fully discuss the case with him.[2] (See June 13, 2017 Hr'g Tr. at 6.) The Court is unconvinced by Dotstry's recent suggestion that because he was "nervous" and "discombobulated" at the change-of-plea hearing, (see Nov. 3, 2017 Hr'g Tr. at 36), he was somehow unable to accurately express his satisfaction with his counsel's services. Furthermore, at the change-of-plea hearing, Dotstry testified that he entered the plea voluntarily, of his own free will and absent any coercion. (See June 13, 2017 Hr'g Tr. at 23. At the November 3, 2017 hearing on the instant motion, Dotstry reaffirmed that he was not forced to plead guilty. (See Nov. 3, 2017 Hr'g Tr. at 26, 36.)

At the time of the change-of-plea hearing, Dotstry was aware of the issues that he now asserts in support of his claim of Tyler's alleged ineffectiveness—the purportedly incorrect or misleading information concerning the justification defense and the

---

[2] Not only did Dotstry express his satisfaction with his counsel at the change-of-plea hearing, (see June 13, 2017 Hr'g Tr. at 6), but as noted earlier, Dotstry had previously retained Tyler to represent him on his two earlier federal convictions, and was satisfied with his services on those occasions. (See Nov. 3, 2017 Hr'g Tr. at 14–15.) While Dotstry noted that there were some communication problems with Tyler and co-counsel during their representation on Dotstry's second federal case, (see id. at 33–34), any such concerns did not dissuade him from retaining Tyler a third time.

11

preservation of certain appellate rights. (See id. at 18–22.) He testified that he had discussed these issues with Tyler. (Id.) But, again, Dotstry did not raise any such concerns with the Court at the change-of-plea hearing. Dotstry's "failure to assert any objections to his counsel's performance at the change-of-plea hearing, despite his knowledge then of the factors he now submits as relevant, 'refutes any claim of ineffective assistance of counsel as a basis for withdrawing his plea.'" United States v. Newson, 46 F.3d 730, 733 (8th Cir. 1995) (quoting United States v. Abdullah, 947 F.2d 306, 312 (8th Cir. 1991)); see also Haubrich, 744 F.3d at 557 (same); United States v. Murphy, 572 F.3d 563, 569 (8th Cir. 2009) (same).

Moreover, the evidence presented by Dotstry does not establish that Tyler's performance was deficient. The Eighth Circuit has declined to recognize self-defense, or "justification," as a defense to a violation of 18 U.S.C. § 922(g). See United States v. Cooney, 571 Fed. App'x 505, 506 (8th Cir. 2014) (noting that the court has declined to recognize this defense); United States v. El-Alamin, 574 F.3d 915, 925 (8th Cir. 2009) ("[T]his circuit has not recognized a defense of legal justification to a violation of § 922(g)."); United States v. Poe, 442 F.3d 1101, 1103–04 (8th Cir. 2006) (same); United States v. Luker, 395 F.3d 830, 832 (8th Cir. 2005) (same); United States v. Taylor, 122 F.3d 685, 688 (8th Cir. 1997) (same); United States v. Lomax, 87 F.3d 959, 961 (8th Cir. 1996) (same); United States v. Martin, 62 F.3d 1009, 1011 (8th Cir. 1995) (same). Dotstry's counsel was not constitutionally deficient for failing to raise such a defense.

Dotstry's other ground for claiming ineffective assistance is his apparent belief,

based on Tyler's alleged advice, that a guilty plea would still allow him to retain the right to challenge this Court's suppression rulings on appeal. (See Nov. 3, 2017 Hr'g Tr. at 21–22, 44.) Yet during the change-of-plea hearing, no such conditions or stipulations were placed on the record. In Haubrich, 744 F.3d at 557, the defendant sought to withdraw his guilty plea, claiming ineffective assistance based on counsel's allegedly misleading statements concerning a possible five-year sentence. The Eighth Circuit was unpersuaded, noting that the plea agreement contained no such stipulations and the defendant indicated that he understood the 20-year maximum sentences for four of his counts, and that the judge would consider the sentencing guidelines. Id. The court stated, "In this circuit, if the defendant understands the possible punishment, it matters not that he says counsel made other promises." Id. (citing United States v. Peebles, 80 F.3d 278, 279 (8th Cir. 1996)). Here, the change-of-plea hearing is devoid of any reference to a "conditional plea." Instead, Dotstry testified to his understanding of the constitutional rights that he was waiving by pleading guilty instead of going to trial, (June 13, 2017 Hr'g Tr. at 7–11), understood the possible statutory penalties that he faced by entering a guilty plea, (id. at 11–14), understood the advisory sentencing guidelines and the range of sentences that might be applied to him, (id. at 14–17), and understood that the parties disagreed about the applicability of a guideline enhancement, which they would have an opportunity to argue at sentencing. (Id. at 15–17). The Court therefore finds that Dotstry fails to establish that his counsel's performance was deficient on this basis.

    Nor does the record support any claim that Tyler's advice somehow "coerced"

13

Dotstry into pleading guilty. Mr. Dotstry's own testimony contradicts any such assertions. At the change-of-plea hearing, Dotstry testified that he entered the plea voluntarily, of his own free will and absent any coercion. (June 13, 2017 Hr'g Tr. at 23.) At the evidentiary hearing, Dotstry reaffirmed that his plea was voluntarily given. (See Nov. 3, 2017 Hr'g Tr. at 36.)

Because the Court finds that Dotstry has not established a fair and just reason to withdraw his plea, the Court is not required to address the additional factors noted earlier, i.e., whether the defendant claims innocence, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the motion is granted. See Ramirez-Hernandez, 449 F.3d at 826 (citing Nichols, 986 F.2d at 1201). The Court does observe, however, that while Dotstry wished to assert a justification defense, he does not proclaim his innocence—to the contrary, he has admitted to the charge against him. (See June 13, 2017 Hr'g Tr. at 6, 22–23.) At the change-of-plea hearing, he testified that he had two prior felony convictions, knew that he was ineligible to possess a firearm, and on November 19, 2016, he physically possessed the Sig Sauer 9-millimeter handgun. (Id.) In addition, the timing of Dotstry's motion to withdraw, filed on September 20, 2017—three months after the June 13, 2017 change-of-plea hearing, and shortly after the September 14, 2017 issuance of the Presentence Report—suggests that his motion to withdraw was prompted by his disagreement with information contained in the Presentence Report, in addition to his continued

14

disagreement with this Court's ruling on his suppression motion.[3]

For all of the foregoing reasons, the Court finds that Dotstry has not established a just and fair reason for the withdrawal of his guilty plea.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant Kendrick Ledelle Dotstry's Motion to Withdraw Plea of Guilty [Doc. No. 62] is **DENIED**.

Dated: November 13, 2017

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

[3] To the extent that Dotstry disputes any of the information in his Presentence Report, the Court advised him at the change-of-plea hearing that he would have an opportunity to object. (See June 13, 2017 Hr'g Tr. at 16.)