## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENDRICK LEDELLE DOTSTRY,<br><br>Defendant. | Case No. 16-CR-346 (SRN/HB)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Andrew Dunne, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for Plaintiff.

Keala C. Ede and Sarah R. Weinman, Office of the Federal Defender, 200 S. 4th St., 107 U.S. Courthouse, Minneapolis, MN 55415, for Defendant, on a limited appointment.

Kendrick Ledelle Dotstry, Reg. No. 09196-041, FCI-Sandstone K-3, P.O. Box 1000, Sandstone, MN 55072, Pro Se.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant Kendrick Ledelle Dotstry's Pro Se Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No. 124]; his Amended Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No. 136][1]; his Pro Se Motion for Discovery [Doc. No. 160]; and his Pro Se Supplemental Motion to Vacate Pursuant to 28 U.S.C. §

---

[1] After Mr. Dotstry filed his pro se motion, he moved for the appointment of counsel [Doc. No. 133] to file the motion to amend. The Court granted his motion to appoint counsel [Doc. No. 134].

2255 [Doc. No. 161].[2]  Also before the Court is the Government's Motion to Supplement the Record [Doc. No. 183].

Based on a review of the file, record and proceedings therein, and for the reasons set forth below, the Court denies Dotstry's § 2255 motions and his Request for a Certificate of Appealability, denies as moot his request for discovery, and grants the Government's motion.

## II.     BACKGROUND

### A.  Procedural Background

In December 2016, the Government charged Dotstry with unlawful possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Indictment [Doc. No. 1].)  While Dotstry was initially represented by counsel from the Federal Defender's Office, in January 2017, he retained F. Clayton Tyler as counsel.  (Notice of Appearance [Doc. No. 9].)  Mr. Tyler had previously represented Dotstry in connection with two prior federal offenses.  (*See* Nov. 3, 2017 Hr'g Tr. [Doc. No. 73] at 13–15.)

The conduct underlying the unlawful possession charge occurred on November 19, 2016, when police responded to emergency calls reporting a man with a red truck who was breaking windows and waiving and pointing a gun at guests in the vicinity of a baby shower. *See United States v. Dotstry*, 745 Fed. App'x 662, 663 (8th Cir. 2018).  When officers arrived, they observed a man in a red truck, later identified as Dotstry, matching the suspect's description and vehicle, leaving the scene.  (*Id.*)  After officers stopped him, and after some

---

[2]     Also pending before the Court are Dotstry's pro se motions for compassionate release [Doc. Nos. 170 & 182] , which the Court will address in a separate order.

initial reluctance on the part of Dotstry to exit the vehicle, he complied and admitted that he had a firearm in the center console of the truck. (*Id.*) Officers retrieved the loaded gun from the vehicle. (*Id.*) In addition, during a search incident to arrest, officers confiscated a controlled substance on his person. (PSR [Doc. No. 79] ¶ 7.)

As to the prior felony convictions that rendered Dotstry ineligible to possess a firearm, in July 2000, he was convicted of possession with intent to distribute cocaine in U.S. District Court for the District of Minnesota, and sentenced to a term of imprisonment of 57 months. *United States v. Dotstry*, No. 99-cr-383 (JRT/FLN), (July 26, 2000 Minutes [Doc. No. 33]); (PSR ¶ 42). After serving more than a year of imprisonment, he was released from the custody of the Bureau of Prisons ("BOP") and his three-year term of supervised release began on November 12, 2004. (PSR ¶ 42.) Subsequently, in October 2009, Dotstry was convicted of conspiracy to distribute cocaine base, and sentenced to a term of imprisonment of 90 months. *United States v. Dotstry*, 08-cr-344(3)(MJD/HB), (Judgment [Doc. No. 155]); (PSR ¶ 49). After serving more than a year of imprisonment for this offense, he was released from BOP custody, and his five-year term of supervised release began on April 28, 2015. (PSR ¶ 49.) As noted, Mr. Tyler represented Dotstry on both of these federal cases. (*See* Nov. 3, 2017 Hr'g Tr. at 13–15.)

Because Dotstry had committed the November 2016 unlawful possession offense while on supervised release from his 2009 drug conspiracy conviction, U.S. Probation also filed a petition for revocation of his supervised release in November 2016, which the Court granted. *Dotstry*, 08-cr-344(3)(MJD/HB), (Order Granting Pet. [Doc. No. 225].)

In June 2017, Dotstry pleaded guilty to the unlawful possession charge. At the hearing

on his change of plea, Dotstry testified regarding the factual basis for his plea, stating in

relevant part:

> Government:  Okay?  I want to focus your attention on November 19th, 2016.
> That's the date that Minneapolis police officers recovered a loaded Sig Sauer
> 9-millimeter handgun from a vehicle that you were driving.  Do you remember
> that incident?
>
> Mr. Dotstry:  Yes, I do.
>
> Government:  All right.  And while prior to November 19th, 2016, you incurred
> two federal convictions that are listed in the Indictment, correct?
>
> Mr. Dotstry:  That's correct.
>
> Government:  One was in 2000 for possession with intent to distribute cocaine,
> and one was in 2000—do you have the Indictment?  May I have that?  Thank
> you.
>
> Ready to go?
>
> Mr. Dotstry:  Yeah.
>
> Government:  Okay.  And one was in 2009 for conspiracy to distribute cocaine,
> cocaine base.  Correct?
>
> Defense Counsel:  He thinks that the first one was in 1999.
>
> Government:  Well, the sentencing date was in 2000.
>
> Defense Counsel:  That's correct.
>
> Mr. Dotstry:  Correct.
>
> Government:  You know that by sustaining those two felony convictions, you
> were ineligible for possessing a firearm, correct?
>
> Mr. Dotstry:  Correct.

(June 13, 2017 Plea Hr'g Tr [Doc. No. 51] at 17–18.)

In July 2017, Mr. Tyler filed a motion to withdraw as counsel due to the deterioration

of the attorney-client relationship.    (Mot. to Withdraw [Doc. No. 44].)  The Court granted

Mr. Tyler's motion to withdraw, (Aug. 3, 2017 Minutes [Doc. No. 53]), and appointed Mr.

Robert M. Paule to represent Dotstry.  (Aug. 22, 2017 Order for Appointment of Counsel

[Doc. No. 54].)

In September 2017, Dotstry sought to withdraw his guilty plea, arguing that his plea

was not made knowingly and voluntarily [Doc. No. 62].  At the evidentiary hearing on

Dotstry's motion, he argued that his former counsel had provided ineffective assistance, such

that he felt "coerced" into pleading guilty.  (*See* Nov. 3, 2017 Hr'g Tr. at 26, 42–43.)  Based

on the full record before it, which included Dotstry's testimony, the Court denied his motion.

(Nov. 13, 2017 Order [Doc. No. 76] at 11–15.)

Prior to sentencing, Dotstry met with the U.S. Probation Officer charged with

conducting his presentence investigation and provided the following statement regarding his

acceptance of responsibility:

> I, Kendrick Dotstry, hereby state the following:
>
> I admit that on November 19th, 2016, in the District of Minnesota, I illegally possessed a firearm when I was not legally allowed to do so. Specifically, I have two previous federal narcotics convictions which predate November 19th, 2016, and I was aware that it was illegal for me to possess the firearm on November 19th, 2016. I accept responsibility for my actions, and I want to let the court know that I knew what I was doing was wrong.

(PSR ¶ 12.)

On December 21, 2017, the Court held a combined sentencing and final revocation

hearing.  Because Dotstry challenged the PSR's recommendation for an enhanced offense

level under U.S.S.G. § 2K2.1(b)(6)(B), the Court also conducted an evidentiary hearing.  The

Court found that a four-level enhancement was appropriate because Dotstry possessed the loaded firearm in connection with other felony offenses, which also included state charges for second degree assault, terroristic threats, and fifth degree possession of a controlled substance. (Dec. 21, 2017 Sentencing Hr'g Tr. [Doc. No. 102] at 26.) The Government did not oppose Dotstry's request for a Guideline reduction for acceptable of responsibility, which the Court granted. (*Id.* at 28–30.) The Court sentenced Dotstry to terms of imprisonment of 96 months for the unlawful possession offense, (*see* Judgment [Doc. No. 89] at 2), and 30 months for the supervised release violation, *see Dotstry*, 08-cr-344(3), (Judgment [Doc. No. 253] at 2), to be served concurrently.

On Dotstry's behalf, Mr. Paule filed a direct appeal with the Eighth Circuit Court of Appeals, challenging the substantive reasonableness of his unlawful possession sentence under § 922(g). *Dotstry*, 745 Fed. App'x at 663. Specifically, he argued that the Court failed to give weight to his disclosure of the firearm to the police, as well as several mitigating factors in his personal history. *Id.* The Eighth Circuit denied his appeal, finding that the Court properly exercised its discretion in weighing the relevant factors and in the imposition of a within-Guidelines sentence. *Id.* Dotstry then filed a petition for a writ of certiorari, which the Supreme Court denied on October 7, 2019. *Dotstry v. United States*, __ U.S. __, 140 S. Ct. 278 (2019).

### B. Pro Se Motion to Vacate Under § 2255

In December 2019, Dotstry filed the instant pro se motion to vacate his conviction under 28 U.S.C. § 2255. He argued that his rights under the Double Jeopardy Clause of the Fifth Amendment were violated because he was "punished in two proceedings"—the

unlawful possession charge in the 2016 case, and the violation of supervised release stemming from the 2008 case—based on the same criminal conduct. (Def.'s Pro Se § 2255 Mem. [Doc. No. 125] at 4–8.) In addition, he stated his intention to later raise an additional issue, within the filing deadline, involving ineffective assistance of counsel. (Def.'s Pro Se § 2255 Mot. at 2 ¶ 11; Def.'s Pro Se § 2255 Reply [Doc. No. 132] at 1.)

In June 2020, with the assistance of appointed counsel, Dotstry filed an Amended § 2255 motion, arguing that *Rahaif v. United States*, 588 U.S. __, 139 S. Ct. 2191 (2019), established a new rule of law that invalidates his conviction. (Def.'s Am. § 2255 Mot. at 1– 2.) Dotstry also filed a Pro Se Reply Memorandum, in which he stated that if the filing of his § 2255 motion foreclosed him from raising an ineffective assistance of counsel claim, he would like to withdraw it and file a single, comprehensive motion. (Def.'s Pro Se § 2255 Reply at 1.)

In November 2020, Dotstry filed a Pro Se Motion for Discovery in connection with his § 2255 motion, seeking "a discovery CD with the 911 calls" from the November 19, 2016 incident. (Def.'s Pro Se Mot. for Discovery at 1.) Shortly thereafter, he filed his Pro Se Supplemental § 2255 Motion, arguing that his conviction should be vacated because he received ineffective assistance of counsel from Mr. Tyler and Mr. Paule. (Def.'s Pro Se Supp'l § 2255 Mot. at 31–57.)

The Government opposes Dotstry's arguments on procedural and substantive grounds. (*See* Gov't's Opp'n [Doc. No. 130]; Gov't's Opp'n to Am. § 2255 Mot. [Doc. No. 148]; Gov't's Opp'n to Supp'l § 2255 Mot. [Doc. No. 173].)

Because Dotstry filed his Amended § 2255 Motion and his Supplemental § 2255

Motion with the Court's permission, the Court considers the arguments raised in his § 2255 motions collectively.  *See* Fed. R. Civ. P. 15(a)(2).

The Court further finds that Dotstry's § 2255 motions are timely.  He filed his initial § 2255 Motion within one year of the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1).  The Supreme Court denied his petition for a writ of certiorari on October 7, 2019 [Doc. No. 123], and his Amended § 2255 Motion was filed prior to October 7, 2020.  Although Dotstry filed his Supplemental § 2255 Motion in November 2020, it was filed with the Court's permission, and within the deadline set by the Court.  (*See* Oct. 16, 2020 Order [Doc. No. 159] at 2–3.)

## III.   DISCUSSION

Section 2255 provides that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

While § 2255 generally affords relief, it is only available in limited circumstances.  As the Eighth Circuit has stated, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).  The petitioner bears the burden of proof as to

8

each ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969)).

    **A.**    ***Rehaif* Claim**

    In *Rehaif*, the defendant was prosecuted under a provision of 18 U.S.C. § 922(g), analogous to the felon-in-possession provision at issue here, that prohibits the possession of firearms by aliens who are unlawfully in the United States. 139 S. Ct. at 2194. At Rehaif's trial, the judge instructed the jury, over Rehaif's objection, that the prosecution was not required to prove that Rehaif "knew that he was illegally or unlawfully in the United States." *Id.* Following Rehaif's conviction and unsuccessful appeal, the Supreme Court issued its ruling on certiorari on June 21, 2019. The Supreme Court held that to establish the "knowledge" element in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the government must prove not only that the defendant knew he possessed a firearm but also that he knew he belonged to a category of persons prohibited from possessing a firearm. *Id.* at 2194–95, 2200. Prior to the Supreme Court's ruling, "no court of appeals had required the Government to establish a defendant's knowledge of his status in the analogous context of felon-in-possession prosecutions." *Id.* at 2195 (quoting *United States v. Rehaif*, 888 F.3d 1138, 1145–46 (11th Cir. 2018)).

    Here, Dotstry argues that his guilty plea must be vacated because the Court accepted it without advising him of each element of § 922(g)—specifically, the element of knowledge of his prohibited status. (Def.'s Am. § 2255 Mot. at 1.) Indeed, the Court did not advise Dotstry of the knowledge-of-status element at his June 13, 2017 change of plea hearing, as *Rehaif* had not been decided at that time. *See United States v. Garcia-*

*Hernandez*, 803 F.3d 994, 996 (8th Cir. 2015) (providing the previous elements of a §
922(g)(1) offense: "(1) previous conviction of a crime punishable by a term of
imprisonment exceeding one year, (2) knowing possession of a firearm, and (3) the firearm
was in or affecting interstate commerce.") (citation omitted).  Because the Court did not
advise Dotstry of the knowledge-of-status element, he claims that his plea was not knowing
and intelligent, and this error violated his due process rights under the Fifth Amendment,
his right to present a defense under the Sixth Amendment, and his right under Federal Rule
of Criminal Procedure 11(b)(1)G) to be advised of the nature of the charge to which he was
pleading.  (Def.'s Am. § 2255 Mot. at 1–2.)

### 1.  Retroactive Application of *Rehaif* on Collateral Review

The Court first notes that in *Rehaif*, the Supreme Court did not state whether its
ruling could be retroactively applied to cases on collateral review.  Pursuant to *Teague v.
Lane*, , 310 (1989) (plurality opinion), a new rule of criminal procedure will not be
applicable to those cases which have become final before the new rule is announced, unless
the new rule is substantive, *Whorton v. Bockting*, 549 U.S. 406, 416 (2007), or falls within
a narrow exception for "watershed rules" that "implicat[e] the fundamental fairness and
accuracy of the criminal proceeding."  *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004)
(citation and quotation marks omitted).  Rules are substantive if they "alter[] the range of
conduct or the class of persons that the law punishes," and procedural if they "regulate only
the manner of determining the defendant's culpability."  *Burton v. Fabian*, 612 F.3d 1003,
1009 (8th Cir. 2010) (citing *Schriro*, 542 U.S. 351–52).

The Eighth Circuit does not appear to have had the occasion to address this issue,

and district courts within the Eighth Circuit have not reached a consensus about whether *Rehaif* is retroactively available on collateral review. Some have found it retroactively available, explaining that *Rehaif* announced a substantive right. *See, e.g., United States v. Bugh*, 459 F. Supp. 3d 1184, 1189 n.13 (D. Minn. 2020) ("Because *Rehaif* announced a substantive right that narrowed a criminal statute, the Court finds that it is retroactively applicable to cases on collateral review."); *see also Ramsey v. United States*, No. 4:19 CV 2643 SNLJ, 2020 WL 5230891, at *10 (E.D. Mo. Sept. 2, 2020) (finding that *Rehaif* was retroactively applicable on collateral review). Yet other courts have determined that a *Rehaif* claim is not retroactively available because *Rehaif* concerned a matter of statutory interpretation, and did not announce a new rule of constitutional law. *See, e.g., United States v. Kennedy*, No. 4:17-CR-00295-BRW/4:20-CV-00848-BRW, 2020 WL 4115088, at *1–2 (E.D. Ark. July 20, 2020) (finding *Rehaif* was not made retroactive to cases on collateral review); *Goldsberry v. United States*, No. 4:19-cv-00950-AGF, 2020 WL 2085647, at *14 (E.D. Mo. Apr. 30, 2020) (stating that *Rehaif* did not announce a new rule of constitutional law). Moreover, some district courts have limited the holding of *Rehaif* to cases involving jury instructions for § 922 offenses, finding it inapplicable to cases involving guilty pleas under that statute. *See, e.g., Goldsberry*, 2020 WL 2085647, at * 13 (stating that *Rehaif* is concerned with the government's burden of proof at trial); *Allen v. Dobbs*, No. CV 1:20-321-HMH-SVH, 2020 WL 907513, at *4 (D.S.C. Jan. 31, 2020) (finding that when a defendant pleads guilty and does not go to trial, he relieves the government of its burden, rendering *Rehaif's* holding irrelevant.) Given the lack of guidance from the Supreme Court, and the unsettled state of the law, the Court will assume

11

without deciding that *Rehaif* may be retroactively applied to cases on collateral review, including cases involving guilty pleas to § 922 offenses.

## 2. Analysis

Dotstry asserts that when a plea is not knowing and intelligent, the Court must review it for plain error.  (Def.'s Am. § 2255 Mot. at 16) (citing *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1036 (8th Cir. 2010); *United States v. Olano*, 507 U.S. 725, 732–37 (1993)).   However, the plain error standard of review applies to arguments raised for the first time on direct appeal.  *Ochoa-Gonzalez*, 598 F.3d at 1036 (stating, on direct appeal under 28 U.S.C. § 1291, "Because she did not make this argument in the district court, this Court reviews only for plain error.") (citing *United States v. Beck*, 250 F.3d 1163, 1166 (8th Cir. 2001)).  As noted, Dotstry has completed the direct appeal process, and now seeks collateral postconviction relief under § 2255.

The standard of review applicable to a claim for collateral relief requires a prisoner to "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  And in particular, "the circumstances under which a guilty plea may be attacked on collateral review" are "strictly limited." *Bousley v. United States*, 523 U.S. 614, 621 (1998).  In *Bousley*, the Supreme Court observed,  it is "well settled" that a voluntary and intelligent guilty plea "may not be collaterally attacked." *Id.* (citing *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).  Moreover, because habeas review "is an extraordinary remedy," that "will not be allowed to do service for an appeal," *id.* (citation omitted), the question of whether a plea was voluntary and intelligent can be attacked on collateral review only if it was first challenged on direct review.  *Id.*  The

Supreme Court has further stated, "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.* at 621 (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Here, as in *Bousley*, because Dotstry did not challenge the validity of his plea on direct appeal, his claim is procedurally defaulted. *Id.*; *see also United States v. Fleming*, No. 18-cr-101(1) (PJD/SER), 2020 WL 5407911, at *1 (D. Minn. Sept. 9, 2020) (finding defendant's *Rehaif* claim, which he did not raise on direct appeal, was procedurally defaulted) (citing *Dejan v. United States*, 208 F.3d 682, 685 (8th Cir. 2000)).

When a claim has been procedurally defaulted, a defendant may raise it on collateral review only under limited circumstances, after demonstrating (1) cause and actual prejudice, or (2) actual innocence. *Bousley*, 523 U.S. at 622 (citations omitted).

### a. Cause for Procedural Default

Dotstry does not address these exceptions in his memorandum in support of his motion, but argues in his reply memorandum that he has demonstrated cause because his *Rehaif* claim was previously unavailable on direct appeal. (Def.'s Reply to Am. § 2255 Mot. [Doc. No. 152] at 2–3.) He points to the dissent in *Rehaif*, in which Justice Alito recognized that the Court's ruling "overturn[ed] the long-established interpretation of an important criminal statute, 18 U.S.C. § 922(g), an interpretation that ha[d] been adopted by every single Court of Appeals to address the question" and that "ha[d] been used in thousands of cases for more than 30 years." 139 S. Ct. at 2201 (Alito, J., dissenting). However, while the law in the Eighth Circuit did not require knowledge of ineligibility at the time Dotstry pleaded guilty, a futility argument is insufficient to establish cause. *See*

*Bousley*, 523 U.S. at 623 (stating, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.") (citation omitted); *see also Fleming*, 2020 WL 5407911, at *1 (finding that status of Eighth Circuit authority at time of guilty plea did not excuse defendant's failure to raise the issue on direct appeal).

Dotstry, however, argues that rather than *Bousley*, the Court should rely on *Reed v. Ross*, 468 U.S. 1 (1984), in which the Supreme Court held that defense counsel's failure to raise a constitutional issue before the state courts constituted cause to excuse the state procedural default, where the defense was sufficiently novel. (Def.'s Reply to Am. Mot. at 3.) However, as noted in *United States v. Carter*, Nos. 17-cr-0141 (PJS/BRT); 17-cr-1415 (PJS/BRT), 2021 WL 373582, at *3 (D. Minn. Feb. 3, 2021), this "novelty argument is really a futility argument in disguise." In other words, Dotstry "is not really arguing that a *Rehaif* claim was novel—i.e., that Rehaif's lawyers came up with an argument that had not occurred to anyone else—but that a *Rehaif* claim would have been futile." *Id.* (citations omitted). As in *Carter*, the Court does not find the knowledge-of-status defense sufficiently novel so as to constitute cause. Accordingly, Dotstry fails to overcome his procedural default by demonstrating cause.

### b. Actual Prejudice or Actual Innocence

But even assuming that Dotstry could show cause, the facts here do not establish either actual prejudice or actual innocence sufficient to overcome Dotstry's procedural default. *See Bousley*, 523 U.S. at 622 (noting that to obtain collateral review of a procedurally defaulted claim, a prisoner must show either cause and actual prejudice or

14

actual innocence) (citations omitted).

Dotstry takes issue with the verb tense used at his change of plea hearing, in which he affirmatively answered the Government's question, "You *know* that by sustaining those two felony convictions, you were ineligible for possessing a firearm, correct?" (June 13, 2017 Plea Hr'g Tr. at 17–18) (emphasis added). He contends that this colloquy merely established knowledge of his prohibited status at the time of his guilty plea—not whether he "*knew*" of his prohibited status at the time of the offense. (Def.'s Am. § 2255 Mot. at 7 n.1) (arguing, "Indeed, given the call of the question, Mr. Dotstry's response in the affirmative cannot be viewed as more than an acknowledgement that, as of the date of the 2017 Change of Plea Hearing, he understood that he was prohibited from possessing the firearm as of the 2016 offense date."). He suggests that counsel for the Government, and by extension the Court, should have asked and advised, consistent with *Rehaif*, whether he "knew" of his prohibited status at the time of the offense. (*Id.*)

Notably, however, Dotstry does not claim that if he had been aware that knowledge of his status was an element of the offense he would have gone to trial, nor can he credibly demonstrate actual innocence. *United States v. Caudle*, 968 F.3d 916, 921–22 (8th Cir. 2020) (finding on direct appeal, no reasonable probability that defendant would not have pleaded guilty had he known of *Rehaif*, in light of criminal history demonstrating knowledge of his status as a felon at the time he committed the offense); *see also Bousley*, 523 U.S. at 623 (to demonstrate actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have convicted him).

The record demonstrates that Dotstry was well aware of his prohibited status. In

addition to the colloquy with counsel for the Government at his guilty plea, the PSR contained Dotstry's admission that "I have two previous federal narcotics convictions which predate November 19th, 2016, *and I was aware that it was illegal for me to possess the firearm on November 19th, 2016*. I accept responsibility for my actions, and I want to let the court know that *I knew what I was doing was wrong*." (PSR ¶ 12) (emphasis added). Dotstry did not object to this portion of the PSR—on the contrary, he reaffirmed it in his sentencing position memorandum, stating, "Mr. Dotstry timely enter[ed] a plea of guilty on June 13, 2017, and later submitted a written statement acknowledging his guilt and accepting responsibility." (Def.'s Position on Sentencing [Doc. No. 84] at 4.)

Also, Dotstry served over a year in prison on his two previous federal convictions. (PSR ¶¶ 42, 49.)  He thus knew that he was prohibited from possessing a gun, given his clear knowledge of his prior felony convictions.  *See Caudle*, 968 F.3d at 922.  Moreover, he committed the November 2016 felon-in-possession offense while on supervised release from his 2009 conviction, violating the express condition that he not possess any firearms. *See Dotstry*, 08-cr-344 (MJD/HB), (Judgment [Doc. No. 155] at 3).

Under these facts, there is no question that Dotstry knew of his prohibited status on November 19, 2016.  Again, Dotstry does not claim that he was unaware of his status, but only that the Court failed to advise him that this was an element of the offense at his plea hearing.  In sum, the facts here do not support a claim of actual innocence, nor do they support a claim of actual prejudice.  *Bousley*, 523 U.S. at 623.

### 3.  Structural Error

Finally, in the context of his arguments under the plain-error standard of review,

16

which is inapplicable, Dotstry asserts that the Fifth and Sixth Amendment violations at his plea hearing were structural errors that warrant relief, relying on *United States v. Gary*, 954 F.3d 194, 198 (4th Cir. 2020).  (Def.'s Am. § 2255 Mot. at 16–17.)  Indeed, in *Gary*, the Fourth Circuit found structural error, 954 F.3d at 199–208, concluding that the defendant's plea was not knowingly and intelligently made because the court accepted it without giving the defendant notice of the knowledge-of-status element under § 922(g).  But the *Gary* court's decision was issued on direct appeal, not collateral review.  Moreover, the Eighth Circuit has reached the opposite conclusion, holding that *Rehaif* error is *not* structural, consistent with the Fifth, Sixth, and Tenth Circuits, which have also found that a constitutionally invalid plea is not structural error.  *United States v. Coleman*, 961 F.3d 1024, 1029–30 & n.3 (8th Cir. 2020) (citing *United States v. Hicks*, 958 F.3d 399 (5th Cir. 2020); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009); *United States v. Trujillo*, 960 F.3d 1196 (10th Cir. 2020)).

Dotstry attempts to distinguish *Coleman*, arguing that it did not address whether a Sixth Amendment violation—which he asserts here, in addition to a Fifth Amendment violation—was an independent structural error.  (Def.'s Am. § 2255 Mot. at 19–20.)  Granted, the petitioner in *Coleman* asserted only that his guilty plea violated his due process rights and a federal criminal procedural rule.  *Coleman*, 961 F.3d at 1030.  But Dotstry reads *Coleman* too narrowly, advancing an argument that this Court previously rejected on a similar *Rehaif* claim.  In *United States v. Reed*, No. 18-cr-143 (SRN/DTS), 2020 WL 6120001, at *3 (D. Minn. Oct. 16, 2020), the Court observed, "Although the *Gary* court closely analyzed the structural error question in light of each of the

constitutional theories raised by the defendant, the *Coleman* court's holding did not rely on the specific theory advanced. Rather, the *Coleman* court observed that '[n]either the Supreme Court nor this court has ever identified a constitutionally invalid guilty plea as structural error.'" (quoting *Coleman*, 961 F.3d at 1029). In sum, the Eighth Circuit has held that a guilty plea rendered constitutionally invalid due to a *Rehaif* error is not a structural error. That proposition is not dependent upon a defendant's particular constitutional theories of invalidity. Accordingly, structural error is inapplicable and affords Dotstry no relief.

Because Dotstry's claim is procedurally defaulted, and he cannot establish cause and actual prejudice, or actual innocence, and the claimed error is not structural, the Court denies Dotstry's § 2255 *Rehaif* claim.

### B.   Double Jeopardy

Dotstry relies on *United States v. Haymond*, __ U.S. __, 139 S. Ct. 2369 (2019), in support of his claim alleging a violation under the Double Jeopardy Clause of the Fifth Amendment. (Def.'s Pro Se § 2255 Mem. at 2–8.) In *Haymond*, decided after Dotstry's sentencing, a plurality of the Supreme Court found unconstitutional the revocation penalties imposed pursuant to the last two sentences of 18 U.S.C. § 3583(k)—applicable to the kidnapping of minors and certain sex crimes—because they required the imposition of a mandatory minimum sentence upon a judicial finding, rather than a jury finding. 139 S. Ct. at 2373. In *Haymond*, this resulted in a mandatory revocation sentence that was longer than the maximum sentence for the underlying sex offense. *Id.* Dotstry analogizes the facts of his case to *Haymond*, arguing that because the Court revoked his supervised

release based on the possession of a firearm, his prosecution for the same possession violates the prohibitions against double jeopardy.  (Def.'s Pro Se § 2255 Mem. at 2–8.)

### 1. Retroactive Application of *Haymond* on Collateral Review

As an initial matter, the Supreme Court did not state whether its holding in *Haymond* was retroactively available on collateral review.  As discussed earlier with respect to Dotstry's *Rehaif* claim, under *Teague*, 489 U.S. at 310, for a new rule of criminal procedure to be retroactively applicable on collateral review, it must be substantive, *Whorton*, 549 U.S. at 416, or be considered a "watershed rule[]" that "implicat[es] the fundamental fairness and accuracy of the criminal proceeding."  *Schriro*, 542 U.S. at 352 (citations omitted).  The Eighth Circuit does not appear to have yet considered whether *Haymond* may be retroactively applied to cases on collateral review.  Other courts have found that *Haymond* announced a procedural rule, not a substantive rule, and therefore does not apply retroactively.  *See United States v. Salazar*, 784 F. App'x 579, 584 (10th Cir. 2019); *Hileman v. United States*, No. 4:19-CV-00833-JAR, 2021 WL 1611718, at *6 (E.D. Mo. Apr. 26, 2021);  *Hardgrave v. United States*, No. 4:19 CV 2484 SNLJ, 2020 WL 4903753, at *3–4 (E.D. Mo. Aug. 20, 2020);  *McBride v. Andrews*, No. 2:19cv608, 2020 WL 4742809, at *3 (E.D. Va. June 30, 2020); *United States v. Druggan*, No. 2:14-cr-066, 2020 WL 565008, at *1 (S.D. Ohio Feb. 5, 2020), *report and recommendation adopted*, 2020 WL 1983067 (S.D. Ohio Apr. 27, 2020); *Williams v. United States*, No. 3:16-CR-25, 2019 WL 6195090, at *2 (N.D.W. Va. Oct. 23, 2019), *report and recommendation adopted*, 2019 WL 6178678 (N.D.W. Va. Nov. 20, 2019).

The Court is persuaded by the weight of authority that *Haymond* announced a

procedural rule, as it "speaks to the allocation of decision-making authority between judge and jury, an issue which has been consistently described as a 'prototypical procedural rule[].'" *Hileman*, 2021 WL 1611718, at *6 (citing *Schriro*, 542 U.S. at 353). Accordingly, the Court finds that *Haymond* does not apply retroactively on collateral review and affords Dotstry no relief.

### 2. Analysis

Even if this claim were available on collateral review, as with Dotstry's claim under *Rehaif*, he failed to raise this issue on direct appeal. *See Dotstry*, 745 Fed. App'x at 663. Accordingly, his claim is procedurally defaulted, absent a showing of cause and actual prejudice, or actual innocence. *See Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012). Dotstry identifies neither cause nor prejudice, nor does he claim actual innocence. Moreover, for many of the same reasons discussed with respect to his *Rehaif* claim, no facts support the position that cause, actual prejudice, or actual innocence are implicated here. Nothing prevented Dotstry from asserting this claim on direct appeal, despite the fact that *Haymond* had not yet been decided, *see Bousley*, 523 U.S. at 623, nor can Dotstry credibly assert actual innocence.

Moreover, even if the Court were able to consider the merits of Dotstry's claim, under long-standing Eighth Circuit jurisprudence, "the same conduct can result in both a revocation of a defendant's supervised release and a separate criminal conviction without raising double jeopardy concerns." *United States v. Wilson*, 939 F.3d 929, 931 (8th Cir. 2019) (citing *United States v. Dang*, 907 F.3d 561, 567 (8th Cir. 2018); *see also United States v. Bennett*, 561 F.3d 799, 802 (8th Cir. 2009)). This is because the consequences

attendant to a violation of supervised release "are first and foremost considered sanctions for the defendant's 'breach of trust'—his 'failure to follow the court-imposed conditions' that followed his initial conviction—not 'for the particular conduct triggering the revocation as if that conduct were being sentenced as new federal criminal conduct.'" *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment) (quoting U.S. Sentencing Guidelines Manual ch. 7, pt. A, cmt. 3(b)).  In other words, revocation of supervised release is understood to be "part of the penalty for the initial offense."  *Id.* (citing *Johnson v. United States*, 529 U.S. 694, 700 (2000)).

And, in *Wilson*, 939 F.3d at 932, the Eighth Circuit rejected the very argument that Dotstry asserts here.  The defendant invoked *Haymond*, arguing that because his revocation of supervised release was based on the possession of a firearm, any criminal prosecution for the same possession necessarily violated the Double Jeopardy Clause.  *Id.*  Quoting *Haymond*, the Eighth Circuit explained that the statutory provision at issue in *Haymond*, § 3583(k), was significantly different than the provisions applicable to the unlawful possession-related violations of supervised release, § 3583(e) and (g):

> While "a term of imprisonment" is mandatory for violation of § 3583(g), the statute does not require a mandatory minimum potentially longer than the defendant's original sentence. Section 3583(g), unlike subsection (k), requires the court to consider the underlying offense and gives the court discretion to determine the length of sentence up to the limitations of subsection (e)(3). This limitation demonstrates that § 3583(g) is designed to sanction the defendant's breach of trust rather than punish a separate crime.

*Id.* at 933 (quoting *Haymond*, 139 S. Ct. at 2386 (Breyer, J., concurring in the judgment)).

The plurality in *Haymond* observed that, in contrast to the mandatory five-years-to-life provision under § 3583(k), "in most cases . . . , combining a defendant's initial and

post-revocation sentences issued under § 3583(e) will not yield a term of imprisonment that exceeds the statutory maximum term of imprisonment the jury has authorized for the original crime of conviction." *Haymond*, 139 S. Ct. at 2384 (plurality opinion).

Here, the "underlying offense" to which the supervised release conditions attached was Dotstry's 2009 drug conviction, for which he received a 90-month sentence. *Dotstry*, 08-cr-344(3) (MJD/HB), (Judgment [Doc. No. 155] at 2). He received a 30-month sentence for violating those supervised release conditions. *Id.* (Judgment on Supervised Release Violation [Doc. No. 253] at 2). This "total sentence" of 120 months is less than the statutory maximum term of life imprisonment authorized for his violation of the underlying drug offense under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. *Dotstry*, 08-cr-344(3) (MJD/HB) (Plea Agmt. [Doc. No. 129] ¶¶ 1, 4(b)). Moreover, with respect to Dotstry's 30-month supervised release sentence and his 96-month felon-in-possession sentence, Dotstry is serving the sentences concurrently.

Here, as in *Wilson*, "[b]ecause the imposition of a sentence under § 3583(g) is a sanction rather than a punishment for a separate offense, criminal prosecution does not violate double jeopardy." 939 F.3d at 933; *see also United States v. Watters*, 947 F.3d 493 (8th Cir. 2020) (observing that in *Wilson*, it had found the holding of *Haymond* inapplicable to § 3583(g)). Furthermore, Dotstry was deemed to be in violation of supervised release not simply for possessing a firearm, but also for his failure to remain law abiding and for the unlawful possession of a controlled substance. *United States v. Dotstry*, 08-cr-344(3) (MJD/HB), Judgment on Supervised Release Violation [Doc. No. 253] at 1).

Accordingly, for all of the foregoing reasons, the Court finds that Dotstry's claim

for relief based on *Haymond* fails.

### C.   Ineffective Assistance of Counsel

Finally, Dotstry asserts a § 2255 claim for ineffective assistance of counsel.  (*See generally,* Def.'s Pro Se Supp'l § 2255 Mot.)  Specifically, he asserts the following grounds in support of his claim:  (1) Mr. Tyler failed to investigate the law and the facts of the case; (2) Mr. Tyler was ineffective in moving to suppress evidence and statements made by Dotstry to the police; (3) Mr. Tyler misadvised Dotstry concerning his plea, and coerced him into entering a guilty plea; (4) Mr. Tyler did not provide effective legal assistance at the hearing on Dotstry's change of plea; and (5) Mr. Paule failed to properly address Mr. Tyler's ineffective assistance.  (*Id*. at 34–55.)

In opposition to Dotstry's claims of ineffective assistance, the Government submits the affidavits of Mr. Tyler [Doc. No. 183-1] and Mr. Paule [Doc. No. 183-2], who refute Dotstry's allegations.  The Government initially submitted unnotarized affidavits from Dotstry's former counsel [Doc. Nos. 173-1 and 173-2].  The affidavits also failed to comply with 28 U.S.C. § 1746, as the affiants failed to certify that the statements were made "under penalty of perjury."   Dotstry argued that the Court must disregard the original affidavits on this basis. (Def.'s Pro Se Reply to Supp'l § 2255 Mot. [Doc. No. 178] at 1–2.) Subsequently, the Court issued an Order advising the Government that if it wanted the Court to consider the affidavits, it must refile either notarized affidavits or affidavits containing language sufficient to comply with 28 U.S.C. § 1764.  (June 3, 2021 Order [Doc. No. 181].)  The Government now seeks leave to supplement the record with the notarized affidavits, which are otherwise identical to the original affidavits.  The Court grants the

Government's motion and will consider the statements in the notarized, re-signed affidavits from Mr. Tyler and Mr. Paule. The resubmitted affidavits are identical to the original affidavits, but for notarization, and Dotstry has had ample notice of the substance of the affidavits and has responded to them. (*See* Def.'s Pro Se Reply to Supp'l § 2255 Mot.)

Mr. Tyler has been a member of the state bar of Minnesota since 1979, is a Minnesota State Bar Association Board-Certified Criminal Law Specialist, and has practiced criminal defense in state and federal courts in Minnesota for over 34 years. (Tyler Aff. ¶ 1.) As noted, he previously represented Dotstry in connection with 2008 federal drug conspiracy charges and 1999–2000 federal drug possession charges. (*Id.* ¶ 2.)

Dotstry's subsequent counsel, Mr. Paule, has been licensed to practice law in Minnesota since 1989, has practiced criminal defense law in state and federal courts in Minnesota for over 30 years, and has served as an attorney on the federal Criminal Justice Act panel for 23 years. (Paule Aff. ¶ 1.)

### 1. Legal Standard

Within the context of § 2255, to establish ineffective assistance of counsel, a movant must satisfy the "heavy burden" of the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Apfel*, 97 F.3d at 1076. Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988).

To establish deficient performance, the movant must demonstrate that counsel's performance was "outside the range of professionally competent assistance," *Cox v. Norris*,

133 F.3d 565, 573 (8th Cir. 1997), such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Judicial review of counsel's performance is "highly deferential," involving "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689–90. In analyzing counsel's performance, a defendant must show that counsel's errors were not the result of "reasonable professional judgment." *Id*. at 690.

To establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To satisfy a showing of prejudice in cases involving guilty pleas, the defendant must show that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Indeed, Dotstry contends, "But for Tyler's disinformation[,] Dotstry would have gone to trial." (Def.'s Pro Se Supp'l § 2255 Mot. at 46.)

However, "[c]ourts should not upset a guilty plea simply because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Meza-Lopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019) (citing *Lee v. United States*, __U.S. __, 137 S. Ct. 1958, 1967 (2017), *cert. denied*, 140 S. Ct. 871 (2020)). Rather, "[j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* (citing *Lee*, 137 S. Ct. at 1967).

## 2.  Investigation of the Facts and the Legal Defenses

As noted, Dotstry argues that Mr. Tyler failed to investigate the facts and the law,

including by failing to:  (1) interview Dotstry and witnesses; (2) retrieve and review security footage of the parking lot in question; and (4) assert a defense of self-defense. (Def.'s Pro Se Supp'l § 2255 Mot. at 35.)  Instead, he contends that Mr. Tyler simply "admonish[ed] Dotstry for screwing up and [told] him to get a 'good story.'" (*Id.*)  Dotstry contends that he also provided Mr. Tyler with additional funds to hire a private investigator, but "never saw any evidence" that Mr. Tyler used the funds to do so.  (*Id*. at 36.)

As to prejudice, Dotstry contends that this lack of an investigation caused Mr. Tyler to overlook the fact "that the police forced Dotstry into self-incrimination via a not-so subtle threat of violence," and to fail to assert "a self-defense/justification defense to felon in possession."  (*Id*.)  Furthermore, he argues that the lack of investigation led to a "false narrative" about the events of November 19, 2016, (*id.*), including the "invented" narrative that Dotstry "visited a baby shower only to point a gun in the face of an expect[ant] mother."  (Def.'s Pro Se Reply to Supp'l § 2255 Mot. at 5.)

### a.  Investigation of the Facts

"[F]ailing to interview witnesses or discover mitigating evidence may be a basis for finding counsel ineffective within the meaning of the Sixth Amendment right to counsel." *United States v. Vazquez-Garcia*, 211 Fed. App'x 544, 546 (8th Cir. 2007) (citing *Kramer v. Kemna*, 21 F.3d 305, 309 (8th Cir. 1994) (quotations omitted)).  However, even if the failure to interview does not meet an objective standard of reasonableness, the defendant still needs to substantially show that but for the failure to interview the witness, "there is a reasonable probability that the result of his trial would have been different."  *Id.* (citing *Kramer*, 21 F.3d at 309) (quotations omitted).  Dotstry fails to meet this standard.

First, the evidence in the record does not support a finding that Mr. Tyler failed to interview witnesses or discover mitigating evidence.  Mr. Tyler states that he met and spoke with Dotstry several times to discuss his case, and, among other things, discussed "at length" the criminal charges in the Indictment, the supervised release violation, and the evidence seized by police.  (Tyler Aff. ¶ 5.)  Moreover, at the plea hearing, Dotstry testified under oath that he had had the opportunity to discuss with Mr. Tyler the charges against him and to tell him everything he wanted him to know about the case.  (June 13, 2017 Plea Hr'g Tr. at 6.)

While Dotstry alleges that Mr. Tyler failed to interview witnesses to the November 19, 2016 incident, Mr. Tyler states that at his client's request, he hired a private investigator who "conducted an investigation of the underlying incident including a visit to the scene, interviewing several witnesses and taking a statement from one of those witnesses." (Tyler Aff. ¶ 5.)  In fact, Dotstry acknowledges that he paid Mr. Tyler to hire a private investigator to gather witness information.  (Def.'s Pro Se Supp'l § 2255 Mot. at 35–36.)  Mr. Tyler was not ineffective for failing to interview witnesses, particularly as he hired a private investigator to do so.

The only independent support that Dotstry provides regarding the information that interviews with witnesses would have revealed, and how that information would have led to a different outcome, is the Declaration of Juanita Funches [Doc. No. 174].  In her two-sentence declaration, Funches states, "I Juanita Funches, did not see Kendrick Dotstry with a weapon on November 19th.  Kendrick also did not enter the establishment where the event was taking place."  (Funches Decl. at 1.)

27

Even assuming that Mr. Tyler or the private investigator failed to interview Funches, her statements would not have led to a different result. Dotstry was convicted of being a felon in possession, and testified, under oath, that he possessed the gun in question on November 19, 2016. (June 13, 2017 Plea Hr'g Tr. at 20–23.) The fact that Funches did not personally see Dotstry with the gun, or see him enter "the establishment" on November 19, does not overcome Dotstry's admission, coupled with the evidence received at Dotstry's criminal suppression and sentencing hearings that multiple 911 callers reported that a man matching Dotstry's description was pointing a gun at various people in a parking lot. (*See* Apr. 12, 2017 R&R [Doc. No. 34] at 2–3; Dec. 21, 2017 Sentencing Hr'g Tr. at 8.) In his Supplemental § 2255 Motion, Dotstry states that Funches "never claimed that Dotstry pointed a gun at her," but credits her with merely stating that "Dotstry was *known* for carrying a gun." (Def.'s Pro Se Supp'l § 2255 Mot. at 39) (emphasis in original). The fact that he was "known for carrying a gun" would not have led to a different outcome in this felon-in-possession case, particularly given the other evidence in the record, including Dotstry's admission. (*See generally*, Apr. 12, 2017 R&R at 2–3; June 13, 2017 Plea Hr'g Tr. at 20–23.) Furthermore, Funches' declaration lacks any foundation about where or how she was able to observe Dotstry on "November 19th" (presumably, in 2016). In sum, Dotstry fails to show that he was prejudiced by counsel's purported failure to interview witnesses.

For all of the foregoing reasons, the Court finds that Dotstry has failed to show that Mr. Tyler's conduct with respect to investigating the facts was objectively unreasonable. Mr. Tyler met with Dotstry to discuss the underlying incident and hired a private

investigator to interview witnesses.  Nor has Dotstry shown that but for a failure to interview witnesses, the outcome of his case would have been different.  *See Vazquez-Garcia*, 211 Fed. App'x at 546.

### b.  Legal Defenses

Dotstry also contends that Mr. Tyler failed to properly explore potential legal defenses.  He argues that the outcome of his case would have been different because Mr. Tyler "failed to understand that the police forced [him] into self-incrimination via a not-so-subtle threat of violence—which, of course, would have supported a strong duress defense which might very well have ended this case early on."  (Def.'s Pro Se Supp'l § 2255 Mot. at 36; Def.'s Pro Se Reply to Supp'l § 2255 Mot. at 5.)  However, Dotstry provides little information about the purportedly incriminating statements or the "not-so-subtle threat of violence."  If he is referring to statements that he made to Minneapolis Police Officer Andrew Schroeder while in the Minneapolis jail's sally port, the Court ruled they were voluntarily made and were not the product of any interrogation.  (May 26, 2017 Order [Doc. No. 37] at 5.)  And if he is referring to statements about the possession of the gun and its location in the vehicle, the Court ruled they were admissible under the public safety exception.  (*Id*. at 8.)  Assuming that these are the statements to which Dotstry refers, they do not support a "duress defense."  To the extent that he refers to other statements, he fails to identify them.  Accordingly, this basis for relief fails.

Dotstry further asserts that Mr. Tyler's failure to properly investigate the law caused

him to "miss" a "self-defense" defense to the felon-in-possession charge.[3]  (Def.'s Pro Se Supp'l § 2255 Mot. at 36–37; Def.'s Pro Se Reply to Supp'l § 2255 Mot. at 5.)   In November 2017, the Court rejected this argument, which Dotstry articulated as a basis for withdrawing his guilty plea.  (*See* Nov. 13, 2017 Order at 11–14.)  Dotstry has long maintained that his actions on November 19 were in "self-defense."  (*See, e.g.*, Nov. 3, 2017 Hr'g Tr. at 12.)  He has explained that on that day, he visited the apartment complex in question to attend a baby shower for Juanita Funches, with whom he was expecting a child.   (Def.'s Nov. 3, 2017 Letter [Doc. No. 68] at 2.)   However, Dotstry was also expecting a child with a different woman—a fact that was apparently known to Juanita and members of her family, who were unhappy with Dotstry.  (*See id.*) (stating, "A couple of sisters of . . . Juanita got involved and started a [w]hole bunch of drama and turn[ed] her family against me.")  After arguing with Funches, an armed man named Duke told Dotstry to leave, and the two men engaged in a fist fight outside.  (*Id.*)  Dotstry has stated that at some point, approximately 20 members of Juanita's family approached the men.   (*Id.*) Believing that the family members intended to harm him, Dotstry waved a gun in front of himself, "to get all the people to back away from me."  (*Id.*)[4]

---

[3]     Relatedly, Dotstry also alleges that Mr. Tyler failed to obtain security camera footage from the parking lot on the day of the incident.  (Def.'s Pro Se Supp'l § 2255 Mot. at 35; Def.'s Pro Se Reply to Supp'l § 2255 Mot. at 5.)  Because the Court presumes that this allegation relates to Dotstry's claimed self-defense or justification defense, the Court's analysis of the issue also applies to Mr. Tyler's alleged failure to obtain security camera footage.

[4]     Dotstry makes the distinction that he never "pointed" the gun at the crowd, but merely "waved" it.  (Def.'s Pro Se Supp'l § 2255 Mot. at 10) ("showing the gun to the crowd as a deterrence measure should be distinguished from 'pointing.'").  For purposes

In the Court's November 13, 2017 order denying Dotstry's motion to withdraw his guilty plea, the Court observed that self-defense, or "justification," is not a recognized defense to a violation of 18 U.S.C. § 922(g) in the Eighth Circuit, and Mr. Tyler's representation was not constitutionally deficient for failing to raise such a defense. (Nov. 13, 2017 Order at 12) (citing *United States v. Cooney*, 571 Fed. App'x 505, 506 (8th Cir. 2014); *United States v. El-Alamin*, 574 F.3d 915, 925 (8th Cir. 2009); *United States v. Poe*, 442 F.3d 1101, 1103–04 (8th Cir. 2006); *United Sates v. Luker*, 395 F.3d 830, 832 (8th Cir. 2005); *United States v. Taylor*, 122 F.3d 685, 688 (8th Cir. 1997); *United States v. Lomax*, 87 F.3d 959, 961 (8th Cir. 1996); *United States v. Martin*, 62 F.3d 1009, 1011 (8th Cir. 1995)). Notably, the Court observed that although Dotstry had testified about discussing this issue with Mr. Tyler, he failed to assert any objections to Mr. Tyler's performance at the hearing on his change of plea, despite his knowledge of this issue at that time, and despite the Court's specific inquiry as to whether he was satisfied with his counsel. (*Id.*) The Court finds no basis to depart from its earlier determination.

While Dotstry argues that Mr. Tyler deprived him of "present[ing] the Eighth Circuit with an opportunity to accept the defense," (Def.'s Pro Se Supp'l § 2255 Mot. at 36–37), the Court disagrees. Even if the Eighth Circuit recognized a self-defense or justification defense to a felon-in-possession charge, Dotstry could not establish all of the

---

of his felon-in-possession offense, however, this is a distinction without a difference. And, in any event, Dotstry has testified under oath that he "pointed" the gun at the crowd. (Nov. 3, 2017 Hr'g Tr. at 10–11) ("I was pointing the gun . . . back and forth"; "I was swinging the gun back and forth because her family was coming out"; "I was pointing towards the ground, though [in the general direction of the approaching people].").

elements.  Under the facts here, Dotstry could not show that he "had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct" and that he "had no reasonable, legal alternative to violating the law." *See Martin*, 62 F.3d at 1012 (listing four elements of the defense, and noting that Eighth Circuit does not recognize this defense, but even if it did, the defendant could not satisfy the elements).  The record shows that Dotstry arrived at a baby shower knowing that Funches' family members were angry with him, smashed windows, argued with Funches and others, and engaged in a fist fight.  He knowingly placed himself in a volatile situation, escalated tensions by arguing, and had other alternatives to brandishing a weapon.  Therefore, Mr. Tyler's failure to raise self-defense was not objectively unreasonable, and Dotstry suffered no prejudice from his failure to assert this defense.

For all of these reasons, the Court finds that Dotstry's claim for ineffective assistance based on Mr. Tyler's failure to assert certain legal defenses fails.

### c.  "False Narrative"

In addition, Dotstry argues that he was prejudiced by Mr. Tyler's failure to investigate the facts and the law because it allowed the Government to present a "false narrative" that he "visited a baby shower only to point a gun in the face of the expect[ant] mother."  (Def.'s Pro Se Reply to Supp'l § 2255 Mot. at 5; *see also* Def.'s Pro Se Supp'l § 2255 Mot. at 39 (referring to "an entirely false narrative that Dotstry pointed a loaded gun at a pregnant woman, i.e., Funches.")  The Court rejects this characterization, as the Government has not contended that Dotstry attended the shower in order to point a gun in the face of an expectant mother.  Nor is there any evidence that Mr. Tyler's representation

somehow influenced the Government's portrayal of the November 19, 2016 incident.

For all of the foregoing reasons, the Court finds that Mr. Tyler's conduct with respect to investigating the law and facts was not objectively unreasonable, nor was Dotstry prejudiced.

### 3. Suppression of Evidence

Dotstry also claims that Mr. Tyler was ineffective in moving to suppress evidence and statements collected by the police when they detained Dotstry. (Def.'s Pro Se Supp'l. § 2255 Mot. at 41–42.) Specifically, he contends that Mr. Tyler failed to challenge the "use of threats of violence to coerce Dotstry into waiving his Constitutional right against self-incrimination" when the police asked if Dotstry had a gun in the car. (*Id.*)

Dotstry's claim, however, is contradicted by the record, as Mr. Tyler filed suppression motions on Dotstry's behalf [Doc. Nos. 17–25]. At the March 2, 2017 evidentiary hearing on the motions to suppress evidence obtained as the result of a search and seizure, and to suppress statements made by Defendant incident to and following his arrest, Mr. Tyler cross-examined Officer Schroeder. (*See* Mar. 2, 2017 Ex. & Witness List [Doc. No. 29].) Although Dotstry complains that his counsel failed to affirmatively call witnesses on his behalf, Mr. Tyler states that he determined that the testimony of such witnesses was not relevant to the suppression issues in question. (Tyler Aff. ¶ 7.)

After the hearing, Mr. Tyler submitted a supplemental memorandum arguing that Dotstry's statements were obtained in violation of his *Miranda* rights, but withdrew his motion to suppress evidence obtained by search and seizure, based on the evidence offered at the motion hearing. (Def.'s Supp'l Suppression Mem. [Doc. No. 32] at 1–4.) In a report

33

and recommendation, the magistrate judge recommended that Defendant's motion to suppress statements be denied, finding that the statements Dotstry had made during the stop were admissible under the public safety exception to *Miranda*, and his post-arrest statements were voluntarily made and not in response to interrogation.  (Apr. 12, 2017 R&R at 10–11.)  Mr. Tyler filed objections to the report and recommendation on Dotstry's behalf.   The Court issued an order on May 26, 2017, adopting the report and recommendation in part and overruling it in part.  The Court agreed with the magistrate judge that Dotstry's statements during the stop about the location of the gun were admissible, but found that his admission that he lacked a permit for the gun was in response to an interrogation and would be suppressed.  (May 26, 2017 Order at 10.)

Thus, contrary to Dotstry's allegations, Mr. Tyler not only filed suppression motions, but his motion to suppress statements was partially successful.  Also, based on the evidence submitted at the motion hearing, it was not objectively unreasonable for Mr. Tyler to withdraw the motion to suppress evidence obtained a result of search and seizure. Officers had probable cause to stop Dotstry, as they had reason to believe he was involved in the gun-waving incident since he matched witnesses' descriptions of the suspect and the suspect's vehicle, and was in the immediate area.  *United States v. Andrews*, 381 F. Supp. 3d 1044, 1064 (D. Minn. 2019) (finding officers had probable cause to initiate stop based on corroborating information provided by witnesses, among other things).   Moreover, given the witnesses' reports, officers had reason to believe that the car contained a gun, and could lawfully search the car and seize the gun, under these circumstances.  *See United States v. Edwards*, 891 F.3d 708, 712 (8th Cir. 2018) (stating that pursuant to the

34

automobile exception to the warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe the car contains contraband or other evidence) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)).  Mr. Tyler's actions were not objectively unreasonable, and Dotstry suffered no prejudice on this basis. Accordingly, Dotstry's claim of ineffective assistance based on the suppression of evidence fails.

### 4.  Guilty Plea

As noted, to show prejudice in the context of a guilty plea, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, he would have insisted on going to trial, and not pleaded guilty.  *Meza-Lopez*, 929 F.3d at 1045 (citing *United States v. Frausto*, 754 F.3d 640, 643 (8th Cir. 2014)).

Dotstry argues that Mr. Tyler was ineffective for "misadvising" him about a guilty plea, "coercing" him to plead guilty, and providing ineffective assistance at the plea hearing.  (Def.'s Pro Se Supp'l § 2255 Mot. at 43–46.)  He alleges that his counsel's "goal" was to "persuade/force/deceive Dotstry into taking a plea early on so Tyler could collect his fee with minimal time into the case." (*Id*. at 43.)  On the day of the plea hearing, Dotstry contends that he had "no idea" why he was appearing in court.  (*Id*. at 44.)  He states that when he told Mr. Tyler that he wanted to take the case to trial rather than plead guilty, Mr. Tyler "told Dotstry that he would not roll with him to trial and would drop out of the case." (*Id*.)  He contends that Mr. Tyler then provided "disinformation" about the amount of time that Dotstry potentially faced, and that he would be able to plead to "constructive possession" for a 57–71 month term of imprisonment pursuant to a deal that did not exist.

(*Id.* at 45.)  Absent this "disinformation," Dotstry states that he would not have pleaded guilty, and would have gone to trial.  (*Id.*)

In November 2017, when Dotstry attempted to withdraw his guilty plea, he also asserted that Mr. Tyler had rendered ineffective assistance with respect to the guilty plea. (*See* Nov. 13, 2017 Order at 13–15.)  The Court found no basis for this allegation then, nor does it find any support for it now.  Mr. Tyler attests that he met and spoke with Dotstry on multiple occasions on the subject of a guilty plea.  (Tyler Aff. ¶ 8.)  He states that he explained the following:  (1) the legal concept of constructive possession of a firearm; (2) that Dotstry would retain his appellate rights after pleading guilty; and (3) that self-defense was not a recognized legal defense to felon-in-possession charges.  (*Id.*)  In addition, Mr. Tyler states that he informed Dotstry of the deadline for accepting the Government's proposed plea agreement and that he could enter a guilty plea without the benefit of a written plea agreement from the Government.  (*Id.*)

As to Dotstry's allegation that Mr. Tyler was ineffective in advising him to plead guilty, failing to assert self-defense to the felon-in-possession charge, and coercing him into pleading guilty by misrepresenting his potential sentence, the  Court examines whether Mr. Tyler's conduct fell below an objective standard of reasonableness, in light of the record.  *Strickland*, 466 U.S. at 688.  The Court concludes that it did not.  Rather, "[a] reasonable attorney could have determined that the record, including the government's uncontested evidence and [Defendant's] own colloquy with the [Court], established an adequate factual basis for [Defendant's] guilty plea." *Meza-Lopez*, 929 F.3d at 1046 (citing *United States v. Brown*, 331 F.3d 591, 595 (8th Cir. 2003)).  Indeed, the uncontested record

evidence, including Dotstry's colloquy with the Court, in which he admitted to possessing the gun, demonstrates an adequate factual basis for the possession element of the charge. (June 13, 2017 Plea Hr'g Tr. at 21–23); *see Adams v. United States*, 869 F.3d 633, 635–36 (8th Cir. 2017) (noting that a defendant's representations during the plea hearing carry a strong presumption of verity and pose a formidable barrier in any later collateral proceedings).

Dotstry also alleges that his plea was involuntary because Mr. Tyler told him that he could face a 232-month sentence if he lost at trial, when he instead faced a ten-year maximum sentence. (Def.'s Pro Se Supp'l § 2255 Mot. at 45.) When testifying at the hearing on his motion to withdraw his guilty plea, Dotstry elaborated, stating that Mr. Tyler told him he faced ten years on the felon-in-possession charge, but up to 232 months if the Government filed "an 851 or superseding charge." (Nov. 3, 2017 Hr'g Tr. at 19.)

It appears that Mr. Tyler advised Dotstry that if he chose to proceed to trial, he could be exposed to an enhanced sentence pursuant to 21 U.S.C. § 851, due to his prior convictions. (*See id*.) Mr. Tyler avers that he did not provide false or misleading information to persuade Dotstry to plead guilty, nor did he deceive, coerce, or force him to do so. (Tyler Aff. ¶ 8.) Without verifying the precision of Mr. Tyler's 232-month calculation, the Court observes he correctly advised, in general, that under certain circumstances, before trial or before entry of a plea of guilty, the Government may file an information to increase the applicable statutory maximum and minimum punishments based on prior convictions for drug felonies. 21 U.S.C. § 851. As noted earlier, Dotstry had two felony drug convictions.

The contemporaneous plea hearing transcript reflects Dotstry's clear understanding of the ten-year potential maximum sentence, as it was addressed by the Court and the Government, and confirmed by Dotstry. (June 13, 2017 Plea Hr'g Tr. at 12–13, 16.) Furthermore, Dotstry unequivocally testified that he made his guilty plea voluntarily and free from any coercion or threats. (*Id.* at 23.) And again, the Court advised Dotstry to ask to speak with his counsel at any time during the plea hearing, if he had any concerns. (*Id.* at 3.)

Dotstry also contends that Mr. Tyler rendered ineffective assistance by failing to inform him about the effect of Dotstry's colloquy with the Court concerning his understanding of the plea and his satisfaction with counsel's services. (Def.'s Pro Se Supp'l § 2255 Mot. at 46–47.) He contends, "Had Tyler advised Dotstry of the full consequences of his answer to the Court's question [about satisfaction with counsel's representation], Dotstry would have respectfully informed the Court that he could not provide a competent answer to the question before reviewing Tyler's assistance and effectiveness with post conviction counsel." (*Id*. at 47.)

But the record demonstrates that Dotstry fully understood the Court's questions, and knew that he was free to speak with counsel at any time, as the following exchange confirms: "THE COURT: And if I ask you a question that raises a concern in your mind and you wish to talk to your Counsel, you're welcome to do that as often as you would like, okay? MR. DOTSTRY: Okay." (June 13, 2017 Plea Hr'g Tr. at 3.) In addition, the Court invited Dotstry to seek clarification from the Court if he had any difficulty understanding the Court's questions. (*Id.*) From the contemporaneous evidence at the

38

plea hearing, Dotstry expressly acknowledged that he was satisfied with counsel, and had had the opportunity to discuss the charges with Mr. Tyler and tell him everything he wanted him to know about the case. (*Id*. at 6.) Because a guilty plea is "a solemn act not to be disregarded because of belated misgivings," *United States v. Williams*, 536 F.2d 247, 249 (8th Cir. 1976), a defendant's statements during a plea hearing "carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Therefore, the Court rejects Dotstry's current position that if he had been better informed about the implications of his sworn testimony, he would have conditioned his responses by speculating about potential post-conviction proceedings, with different legal counsel.

Finally, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Here, Dotstry admitted to the elements of the felon-in-possession offense.[5] (June 13, 2017 Plea Hr'g Tr. at 21–23; PSR ¶ 12.) Given his admissions and the record evidence, there is no reason to conclude that it would have been rational for him to proceed to trial and risk losing a Guidelines reduction for the acceptance of responsibility. And, because a reasonable attorney would have determined from the record, a review of the evidence, and Mr. Dotstry's admissions that there was an adequate basis for his guilty plea, Mr. Tyler was not ineffective for counseling Dotstry to

---

[5]     As noted in the Court's discussion of Dotstry's *Rehaif* claim, he admitted to the elements of the offense in force at that time.

plead guilty.  There was sufficient evidence in the record at the time of the plea "'upon which a court [could] reasonably determine that the defendant likely committed the offense.'"  *United States v. Cheney*, 571 F.3d 764, 769 (8th Cir. 2009) (quoting *United States v. Gamble*, 327 F.3d 662, 664 (8th Cir. 2003)).

For all of the foregoing reasons, the portion of Dotstry's claim for ineffective assistance of counsel based on his guilty plea and the plea hearing affords no relief and is denied.

### 5.  Failure of New Counsel to Raise Ineffective Assistance Claim

Finally, Dotstry argues that Mr. Paule, whom the Court appointed to represent Dotstry following Mr. Tyler's withdrawal, rendered ineffective assistance by failing to address Mr. Tyler's deficiencies.  (Def.'s Pro Se Supp'l § 2255 Mot. at 49–57.)  Specifically, Dotstry asserts that Mr. Paule failed to conduct an investigation concerning the November 19, 2016 incident, failed to adequately prepare Dotstry for his testimony at the hearing on his motion to withdraw his guilty plea, failed to call witnesses at sentencing, and failed to rebut the Government's "entirely inaccurate narrative of the events of November 19, 2016."  (*Id.* at 52.)  Further, Dotstry contends that while Mr. Paule filed an appeal on his behalf, he failed to consult with him about the grounds of appeal.  (*Id.*)

Mr. Paule refutes Dotstry's allegations.  As noted earlier, Mr. Paule filed Dotstry's motion to withdraw his guilty plea, represented him at sentencing, and submitted an appeal on his behalf.   He states that after his appointment as counsel, he and Dotstry discussed "at length" Dotstry's desire to withdraw his guilty plea.  (Paule Aff. ¶ 5.)  Their discussions included Mr. Paule's legal analysis of the issue, and Dotstry's purported reasons for his

request to withdraw his guilty plea.  (*Id.*)  Mr. Paule then filed a motion to withdraw Dotstry's plea, and represented him at the evidentiary hearing on the motion.  (*Id.*)  Through Mr. Paule's direct examination, Dotstry testified at the hearing, claiming ineffective assistance of his prior counsel.  (*See* Nov. 13, 2017 Order at 7; Nov. 3, 2017 Hr'g Tr. at 23 ("MR. PAULE:  Mr. Dotstry, you're basically telling this judge that you want to withdraw your plea because you felt that your plea of guilty was coerced by activities by Mr. Tyler.  Isn't that correct?  MR. DOTSTRY:  Yes.").)  Moreover, at the conclusion of testimony at the hearing on Dotstry's motion to withdraw his guilty plea, Mr. Paule presented oral argument, asserting that Dotstry should be permitted to withdraw his plea based on improper legal advice.  (Nov. 3, 2017 Hr'g Tr. at 42–45.)  While Mr. Paule's arguments were not ultimately successful, the notion that he failed to advance Dotstry's claims of ineffective assistance of counsel is thoroughly contradicted by the record.

Nor does the record support Dotstry's claim that Mr. Paule failed to adequately prepare him to testify at the hearing on his motion to withdraw his guilty plea.  Again, Mr. Paule states, "I met with Mr. Dotstry numerous times to discuss his case, his desire to withdraw his plea of guilty, his claims about his previous counsel, and the legal analysis of the request to withdraw his plea." (Paule Aff. ¶ 6.)  In particular, Mr. Paule attests that he discussed the advantages and disadvantages of Dotstry's contemplated testimony, including with regard to the potential loss of sentencing credits for the acceptance of responsibility.  (*Id.*)  As to the mechanics of his testimony, Mr. Paule contends that he prepared Dotstry to testify by suggesting possible questions that he might face on cross-examination, as well as beneficial answers.  (*Id.*)  Having reviewed Dotstry's testimony

from the hearing on his motion to withdraw his guilty plea, the Court finds that he was fully advised of the risks of testifying, and testified as to the topics that supported his motion.  The Court finds no basis to support Dotstry's conclusion that Mr. Paule failed to properly prepare him to testify.

Dotstry also alleges that Mr. Paule rendered ineffective assistance for failing to investigate the underlying incident.  (Def.'s Pro Se Supp'l § 2255 Mot. at 49–51.)  Given that Mr. Paule assumed representation *after* Dotstry had pleaded guilty, it was not objectively unreasonable for him to focus on Dotstry's interest in withdrawing his guilty plea, as opposed to the underlying incident.  In evaluating counsel's decision not to investigate, the Court "appl[ies] a heavy measure of deference to counsel's judgments." *Ford v. United States*, 917 F.3d 1015, 1022 (8th Cir. 2019) (quoting *Strickland*, 466 U.S. at 691).  Because Dotstry had admitted to the charge by the time Mr. Paule was appointed to represent him, and because the basis for the withdrawal of his guilty plea was ineffective assistance of prior counsel, Mr. Paule did not render ineffective assistance by failing to investigate the November 19, 2016 incident.

While Dotstry also faults Mr. Paule for not calling witnesses to testify at the sentencing hearing, Mr. Paule acknowledges that he and Dotstry discussed Dotstry's interest in having Juanita Funches testify at sentencing.  (Paule Aff. ¶ 7.)  However, Mr. Paule accurately explained to his client that her testimony would not be relevant to sentencing, although it might be relevant to a motion for reconsideration of his motion to withdraw his guilty plea.  (*Id.*)  He further informed Dotstry that such testimony would "directly contradict" Dotstry's request for credit for the acceptance of responsibility under

42

the Guidelines.  (*Id*.)  After discussing the subject, Mr. Paule states that "Dotstry agreed with my reasoning to not call witnesses at the sentencing hearing."  (*Id*.)

Regarding Dotstry's appeal, Mr. Paule refutes Dotstry's claim that he failed to consult with him.  He notes that he met with Dotstry on January 2, 2018 to discuss the potential appeal, and, after much discussion, Dotstry requested that he appeal only the reasonableness of his sentence, and not the denial of his plea withdrawal. (*Id*. ¶ 8.)   Mr. Paule specifies that he repeated Dotstry's responses on this subject to Dotstry, to confirm their mutual understanding.  (*Id*.)  He states, "At one point during the discussion, Mr. Dotstry became adamant that I should not file any appeal on his behalf, and signed and dated a handwritten letter to this effect."  (*Id*.)  Nevertheless, after more discussion, Mr. Paule contends that Dotstry agreed to an appeal only on the reasonableness of the sentence. (*Id*.)   The Court does not find Mr. Paule's conduct objectively unreasonable, nor does Dotstry demonstrate prejudice.

In sum, the Court finds that Dotstry's claims of ineffective assistance of counsel are contradicted by the record and that he fails to show prejudice.  Accordingly, his claims for relief based on ineffective assistance are denied.

### D.   Discovery Motion

Shortly before filing his Pro Se Supplemental § 2255 Motion, Dotstry filed a request for "my motion of discovery CD with the 911 calls."  (Def.'s Pro Se Discovery Mot. at 1.)  The Court assumes that he refers to audio recordings of the 911 calls concerning the November 19, 2016 incident.  The Government introduced the recordings in evidence at Dotstry's December 21, 2017 sentencing hearing, and the minutes of that hearing reflect

that they were returned to counsel for the Government.  (*See* Dec. 21, 2017 Hr'g Minutes [Doc. No. 88].)  The Court does not have the evidence in question, nor does it appear that it was necessary for the filing of Mr. Dotstry's Pro Se Supplemental § 2255 Motion, which he filed one week after requesting the audio recordings.  For these reasons, the Court denies his discovery motion as moot.

### E.   Evidentiary Hearing

A § 2255 motion may be dismissed without a hearing if: (1) Defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact.  *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). Moreover, where the record includes all of the information necessary for the court to rule on the motion, an evidentiary hearing is unnecessary.  *Covey v. United States*, 377 F.3d 903, 909 (8th Cir. 2004) (citations omitted). Applying this standard to the allegations and the record, the Court finds that Dotstry fails to meet the requirements identified in *Delgado*, 162 F.3d at 983, and the record here includes all the information necessary for the Court to rule.  *Covey*, 377 F.3d at 909.  Accordingly, no evidentiary hearing is required in this case.

### F.   Certificate of Appealability

In order to appeal an adverse decision on a § 2255 motion, a movant must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(B). A court cannot grant a certificate of appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).  This Court has considered whether the

issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)).  Accordingly, the Court declines to issue a certificate of appealability and his request is denied.

## IV.    CONCLUSION

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1.    Defendant's Pro Se Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No. 124] is **DENIED**;

2.    Defendant's Amended Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No. 136] is **DENIED**;

3.    Defendant's Pro Se Supplemental Motion to Vacate Pursuant to 28 U.S.C. § 2255 [Doc. No. 161] is **DENIED**;

4.    Defendant's Pro Se Motion for Discovery [Doc. No. 160] is **DENIED AS MOOT**;

5.    The Government's Motion to Supplement the Record [Doc. No. 183] is **GRANTED**;

6.    Defendant's request for a Certificate of Appealability is **DENIED**; and

7.    No evidentiary hearing is required in this matter.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 10, 2021

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge